Carb, J.
The counsel for the appellees insisted, in the argument,,that though Hopkins had no title when he conveyed to Buchanan’s trustees, yet, as he afterwards obtained it, he and his alienee were estopped from contradicting the deed. With respect to this, I shall only remark, that this technicality is met and neutralized by another, namely, that the deed contains no clause of warranty, and therefore works no estoppel. A deed of bargain and sale, like a release, passes no title which the bargainor had not at the time, yet if there be a warranty annexed, it will bar. “For albeit (as Coke says, Co. Litt. 265. b.) the release cannot bar the right. &c. yet the warranty may rebut, and *377 bar him and his heirs of a future right that was not in him at the time; and the reason wherefore a warranty, which is a covenant real, should bar a future right is, for avoiding a circuity of action.”
Let us next inquire, whether Boswell is a purchaser with notice of Buchanan’s equitable lien, and the legal estate in his hands subject to the satisfaction of the debt due to Buchanan’s executors? Is the recording of a deed of trust, which gives a lien on the equitable title, such notice to a subsequent purchaser of the legal title, as will bind him ? 1 think not. The enrolment and registry acts of England, and our recording acts, are expressly declared to be made for the benefit of subsequent purchasers; to protect them from secret conveyances. These acts, then, ought not to be turned to the injury of those, for whose benefit they were made, unless it be in obedience to some express provision contained in them. But there is none such. They declare, that all deeds Stc. shall be void as to subsequent purchasers, unless duly recorded 5 but they no where declare, that such recording shall charge the subsequent purchaser with notice of the deed. If not recorded, the deed is void as to him; if recorded, it is only so far valid, that it passes to the bargainee the title it purports to convey, provided the bargainor had that title; if he had it not, the deed cannot pass it, though recorded 5 nor will the putting it on record affect the conscience of a subsequent purchaser of the legal title, nor, of course, charge that title with the equity which the deed raised between the bargainor and bargainee. The laws had no such intention, nor will their words bear such construction. That this is settled doctrine in England, there are many cases to shew. Ld. Forbes v. Deniston, 4 Bro. P. C. 189. Cheval v. Nichols, 2 Eq. ca. abr. 63, 4. pl. 7. 1 Stra. 664. S. C. Beatniff v. Smith, 1 Eq. ca. abr. 357. pl. 11. Wrightson v. Hudson, 2 Id. 609. pl. 7. Bedford v. Backhouse, Id. 615. pl. 12. cited Amb. 680. Hine v. Dodd, 2 Atk. 275. Le Neve v. Le Neve, 3 Atk. 646. Sheldon v. Cox, Amb. 624. Morecock v. Dickins, Id. 680. Bushell *378 v. Bushell, 1 Scho. & Lef. 90. in which last case, lord Redesdale reviews all the authorities with his usual ability. In Wrightson v. Hudson, sir J. Jekyll had decided, that the register act did not create constructive notice by the registry; jt avoided only prior charges not registered; and that though Wrightson might have searched the registry, he was not bound to do so. Upon this lord Redesdale remarks, “ Sir J. JekylVs opinion that the act did not create constructive notice by the^registry, appears to be sound. I know of nothing that compels a man to search the registry, more than to search the records of a court of any description.” And he concludes his review by saying, “The effect of all these decisions is, that the registry cannot be considered as notice, with all the consequences that would attach upon it as notice; and if it were so considered, it would lead to very mischievous consequences.” If we say, that the recording of a deed is constructive notice, it is on the sole ground that it is the duty of every purchaser to search the records, and that if he did so, he must see the deed. Now, suppose a deed put upon the record, without the proof and authentication required by law ? We know that this court has, in several cases, declared such deed to be, to all intents and purposes an unrecorded deed; Turner v. Stith, 1 Wash. 319. Currie v. Donald, 2 Wash. 59. 64. Yet it is upon the record, and if the purchaser searched, he would see it, just as certainly as if it had been recorded upon the fullest proof; and- to be consistent, we must say, that he purchases with notice of such deed, and therefore is as much bound by it as the parties, between whom we know it is good though not recorded, because this deed, in violation of law, was put upon record. Thus, we dispense at once with a positive provision of the law, pronouncing such deed void as to the subsequent purchaser. This idea is clearly expressed by lord Redesdale, in Latouche v. Dunsany, 1 Scho. & Lef. 157. Speaking of the registry act, he says, “ If it be notice, it must be notice, whether the deed be duly registered or not; it maybe unduly registered, *379 and if it be so, the act does not give it a preference; and . , . . thus this construction would avoid all the provisions m the act for complying with its requisites.” Again in Underwood v. Ld. Courtown, 2 Scho. & Lef. 64. he says, “ It seems to me, that nothing could be more mischievous than to hold, that putting any thing on the registry, is notice, within the meaning of the word notice as applied to courts of equity in such cases.” In the next page, he says, “ There is an important difference between actual notice and the operation of the register act. Actual notice might bind the conscience of the parties ; the operation of the act may bind their title, but not their conscience.” From these cases, it appears that, for more than a century past, it has been settled law in England, that the mere putting a deed upon the registry, is not notice. Nor has the doubt (it is a mere doubt) thrown out by lord Camden, in Morecock v. Dickins in 1768, nor the distinction attempted by Sugden, p. 509. tended at all to shake this doctrine. It is admitted, that where the construction of an english statute has been settled by a series of decisions, and our legislature enacts that statute in totidem verbis, the construction must be considered as adopted along with the statute. To me it seems that this principle applies strongly to the case before us. Our statute is not a literal copy, but surely it must bo admitted to have been substantially taken from the english statute 2 Ann. ch. 4. commonly called the register act; whiPh after describing the kind of conveyances to which it extends, and saying that memorials of them shall be registered in the manner directed, adds, “ that every such deed or conveyance Sfc. shall be adjudged fraudulent and void, against, any subsequent purchaser or mortgagee for a valuable consideration, unless such memorial thereof be registered, as by this act is directed, before the registering of the subsequent deed or conveyance.” Our statute of conveyances, after directing the mode of recording &c. provided, that “ all deeds of bargain and sale and other conveyances whatsoever of lands &c. and all deeds of trust and mortgages, which shall here-? *380 after be made and executed, shall be void as to all credit°rs ledged or proved, and recorded, according to the directions °f this act.” It is impossible to look at these acts, without see¡ng their exact similarity, as to recording and registering deeds. Our legislature (we must, in decency, suppose) knew that under the english law, the registering a deed had been settled not to create notice: if it had meant, that under our law it should, how easy to have added, that the recording of every such deed, according to the directions of this act, shall be full notice to all subsequent purchasers. It was insisted, however, that the legislature of 1819 believed, that the recording a deed did give notice to all the world; and this was said to be evinced by the 13th section of the revised statute of conveyances, which was added to our law at the late revisal. It directs title bonds and contracts in relation to land, to be recorded; and adds, that such recording shall be taken and held as notice to all subsequent purchasers, of the existence of such bond or contract. If this section proves any thing, it seems to me to prove, that the legislature did not suppose that bare recording (at least of bonds and' contracts) would operate a notice; else why add, that such recording should be taken and held as noticed It must have thought these words necessary to give to recording that effect; and if necessary as to bonds and contracts, equally so, assuredly, as to deeds, for there can be nothing in the nature of the instrument, to make a difference. Why it chose to leave the law with respect to recording deeds &e. just as they found it in the former statutes, and to add, in the new section, that recording should be notice as to bonds and contracts, it is not for me to say. We must construe each section according to its actual words. From this review of the statutes, and the cases settling the construction of them, it is clear to me, that there is nothing in them, that imposes on the purchaser the duty of searching the records. Let us look at analogous cases. A private act of parliament, is not notice to a purchaser; Sudg. and subsequent purchasers, unless they shall be acknow *381 law vend. 535. 2 Ves. sr. 480. 3 Bos. 8i Pul. 57 8. t t . Decrees of courts of equity are not notice to a purchaser; Sudg. 538. Judgements are not notice, nor is the docketing of judgements of itself notice, to a purchaser; Id. 539.
But, even if it were admitted to have been the duty of well to search the records, how far ought that search to be carried ? Assuredly, not beyond the period at which the legal title vested in the vendor. Suppose him to take the advice of counsel; he would call for the chain of title; he would examine the decree of September 1808, directing the title to be made to Hopkins, and the deed made in virtue of this decree of the 2nd December 1810 ; and seeing that the title of JVelson was by this deed conveyed to Hopkins, he would look from this date down to tho time of consultation, to see whether there were any incumbrances. This is all that could, with any shew of reason, be required of him : but this would never lead him to the deed of trust of May 1808, made by Hopkins to Buchanan, and purporting to convey the legal estate, when Hopkins had no such estate in him ; and to impute to him a notice of this, because it was put on record, seems to me wholly inconsistent with equitable principles generally, or the particular ground of favour, on which a fair purchaser stands in that forum.
But though we should decide, that the recording the deed of trust, was no notice, it still remains to inquire, whether Doswell has shewn himself a complete purchaser for value before notice. To constitute him such, J consider that the deed must be executed, and the money all paid, before notice. Sugden, p. 530, lays it down broadly, that “ notice before actual payment of all the money, although it be secured, and the conveyance actually executed, or before the execution of the conveyance, notwithstanding that the money be paid, is equivalent to notice before the contract.” And these positions seem fully supported by the cases (which I have carefully examined). Tourville v. Naish, 3 P. Wms. 307. Story v. Ld. Windsor, 2 Atk. 630. Moore v. Mayhow, 2 Freem. 175. Jones v. Stanley, 3 Eq. ca. abr. 685. *382 pl. 9. Wigg v. Wigg, 1 Atk. 384. We know, that the plea of purchaser for value without notice, if sustained, is a perfect defence; and that against such purchaser, equity will not take the slightest step, not even to perpetuate evi¿[ence against him, or to take from him any advantage the law gives him ; Jerrard v. Saunders, 2 Ves. jr. 454. But it is equally clear, that this plea is a complete defence, or no defence at all. “ It must aver a conveyance, and not articles merely—it must aver the consideration, and actual payment of it; a consideration secured to be paid, is not sufficient.” Mitf. plead. 215,16. It must also deny notice of the plaintiff’s title to a claim, previous to the execution of the deeds, and payment of the consideration. Hardingham v. Nicholls, 3 Atk. 304. A plea averring that the money was paid or bona fide secured to be paid, was overruled. In 2 Newland’s equity, 145, and also in Beame’s pleas in equity, 347, we have forms of the plea of purchaser without notice, at full length; and they set out the purchase, the sum to be given, the estate purchased &c. and positively aver, that the deed was executed, and the whole sum paid, before notice of the plaintiff’s claim. If they fail to do this, the plea is overruled as insufficient; for in pleading, there is the same strictness in equity as at law. If the plea is found to be good in law, issue is taken on its truth, and the defendant must prove the facts, which he has been held to allege; which if he does, the plea is a complete bar; but if he does not, he loses all benefit of the plea. Under this view of the case, I cannot see how a defendant can, in the character of purchaser without notice, avail himself of payment of a part of the purchase money, though paid before notice, and have a decree of the court, that such payment should constitute a lien on the land: it is not at all within the issue : it does not make him a purchaser without notice: and without this, he cannot interfere with the prior lien. Suppose, instead of part, he had paid the whole of the purchase money, but got notice before he had a deed; he would, surely, have as much right to have the whole, as a *383 part, made a lien on tho land ; and this being the full value of the land, would wholly disappoint the prior incumbrancer. I am clearly of opinion, therefore, that Doswell must shew, that he had paid the whole consideration before notice, in order to protect his purchase. This I do not think has been so clearly proved as to authorize a dismission of the bill. And I am finally of opinion, that the decree should be reversed, and the cause sent back to be referred to a commissioner or a jury, to inquire, whether Doswell had paid all the purchase money, before notice of Buchanan’s mortgage; the final decree to be governed by the principles laid down.
Green, J.
If the defence made by Doswell, that he was a bona fide purchaser from Hopkins, without notice of Buchanan’s lien, and that he had fully paid the purchase money before he received actual notice of that lien, had been supported by clear proof, I should have thought the decree should be reversed, and the bill dismissed. In that case, it is not necessary to prove that the purchaser has actually procured a perfect legal title, in order to protect himself against any relief against him in a court of equity, whose maxim is, that it will act in no way against a bona fide purchaser without notice, to expose even his want or defect of title, and, in short, will not permit any inquiry to be there prosecuted in respect to the particulars or lawfulness of his title.
I think it clear, that a recorded deed is no notice to a subsequent purchaser, which can affect his conscience in a court of equity, both upon the authorities cited, and the plain import of our statute. For it adds nothing to the strength of any deed, that it is recorded; but it only takes away the force which a deed would have had, but for the provision of the statute requiring deeds to be recorded, if they be not recorded as required.
If Boswell’s defence had been fully supported by proof, it would have protected him completely against the action *384 of a court of equity, until the trustees for Buchanan had actually recovered the land conveyed by Hopkins to them, in an action at law; in which case, the .impediment to the sale by the decree of the court of equity, would be removed, jjut the evidence leaves it in some degree of doubt, whether Boswell had paid the full amount of his purchase money, before he received notice of Buchanan's claim. My impression is that he had ; but the proofs are not sufficient to justify a judicial decision that he had. And this fact, I think, should be inquired into by a reference to a commissioner before a final decree, and if found to be as alleged by Doswell, the bill dismissed; if not, relief given to the plaintiffs, according to the result of that inquiry.
Cabell, J.
I shall not inquire, whether the deed from Hopkins to Boswell, passed the legal estate of the whole of Bullfield to him; I shall proceed upon the admission that it did so. And, then, this case presents the question, never before directly submitted to this court, Whether, as the law was before the late Tevis'al, a person purchasing without notice, and obtaining the legal title, shall be prejudiced by a prior deed of trust or mortgage of the equitable estate, which was duly recorded previously to his purchase ? It is admitted, on all hands, that actual notice of a prior deed of trust or mortgage, will bind a subsequent purchaser; and there is, certainly, no difference between actual and constructive notice, -in its consequences; Sugd. law vend. 532. The question, therefore, is narrowed down to this: Is the due recording of an equitable deed of trust or mortgage, of itself, constructive notice of that deed, to a subsequent purchaser ? After much reflection, I have come to the opinion that it is. Constructive notice, or (as it is sometimes called) notice by construction of law, is defined to be, “ no more than evidence of notice, the presumptions of which are so violent, that the court will not even allow of its being controverted; per Byre C. B. in Plumb v. Fluitt, 2 Anstr. 438. Sugd. 533. Thus, notice to an agent, is notice to the *385 principal. But there is one kind of constructive notice, which has a very extensive operation : it is, “ where the law imputes that notice, which, from the nature of the transaction, every person of ordinary prudence must necessarily liave;” and the reason of it is forcibly expressed, “ the titles of other men ought not to be shaken, by creating a title vested in a third person through his own follyper lord Erslcine, in Hiern v. Mill, 13 Ves. 120. 121. This principle has been repeatedly recognized, and acted upon. I refer to Ferrars v. Cherry, 2 Vern. 384. Taylor v. Stibbert, 2 Ves. jr. 437. Hill v. Simpson, 7 Ves. 152. [ think this principle applies to our statute requiring deeds of trust and mortgages to be recorded, and should guide us in the construction of it. The great object of the statute, is the benefit of creditors and subsequent purchasers, by enabling them to know whom to trust, and from whom to purchase. Every man is presumed to know the law; particularly a law made for his special benefit. “ Every man of ordinary prudence,” about to purchase from another, searches the record, to see whether the property has been previously conveyed or incumbered. It is gross negligence not to do so. He who fails to do it, wilfully shuts his eyes against the truth, and ought not to be permitted to avail himself of his ignorance. So far from having equal equity, with a former bona fde incumbrancer, whose deed is duly recorded, he has no equity at all. In the language of lord Erskine, “ the titles of other men ought not to be shaken by creating a title vested in him, through his own folly.” I shall only add, that a contrary decision would tend greatly to encourage perjury; for a man may actually have searched the register, and then deny it, without danger of its being proved upon him.
I am well aware, that this principle has not been applied to the register acts in England, and that the registry of a deed there is not held to be constructive notice. I admit also, that I do not perceive any substantial difference between the english register acts and our statute requiring *386 deeds of trust and mortgages to be recorded; though it is v manifest, their phraseology is widely different. Neither the english statute nor our’s says any thing, in express terms, as to the effect of registering or recording deeds, while they (jecjare} ¡n express terms, what shall be the effect of a failure or omission to register or to record. But the question necessarily arises, what is, on general principles, the effect of putting a deed on the register in England, or on the record here ? It has been decided in England, as I have just said, that it does not operate as constructive notice. Does it follow, that we must give the same construction to our statute? I humbly think not. We have, it is true, adopted the common law of England, as the law of this country; and there is nothing which I should consider more authoritative evidence of what that law is, than the decisions of the english judges, upright and eminently learned as they unquestionably are. I should also pay the highest respect to their construction of english statutes, which were in force prior to the 4th year of James I. and which were adopted by the convention of 1776, along with the common law. I will go farther, and say, that, when english statutes of a subsequent date, having been expounded by the english judges, in a long course of uniform opinion and adjudication, have afterwards been adopted into our code, in the very words in which they were originally enacted, I should think it wrong in our courts, to give them a different interpretation ; because it ought to be inferred, that the legislature, in adopting the very words of an english statute, intended to adopt the interpretation that had been given to them in the country from which it was copied. But that is not the case in the present instance. These statutes are of modern date; they have not been copied by our legislature; and the correctness of the interpretation given, in England, to the english statutes, has been more than doubted by some of their profoundest judges, and ablest writers. We find that lord Camden, in Morecock v. Dickins, adhered to the former interpretation, in opposition to his own opinion, merely be *387 cause it had leen so decided, and because it would be mis- . . cinevous to disturb it, since it had given occasion to a thousand neglects to search the register. It is clear that, in his opinion, the registry of a deed, ought, on general principles of equity, to be constructive notice, notwithstanding the statutes had not, in terms, said so. The reasons assigned by him, were abundantly sufficient to justify, and even to require him, to disregard his own opinions, and to adhere to the interpretation given by preceding decisions. But no such reasons exist here : no former decisions on our statute, have produced neglect in purchasers: no former decisions trammel us in the exercise of our judgements. We may, without injury to any body, pursue general principles to whatever just result they may conduct us. For, the construction of our statute is now directly submitted, for the first time. My opinion upon it, has been stated. 1 cannot say what has been the general understanding, in Virginia, upon this subject. But I think it manifest, that the legislature at the late revisal, entertained the same opinion that I have expressed, as to the effect of recording deeds of trust and mortgages, under the former law upon that subject: for it adopted the former law as to the recording of such deeds, without saying any thing as to what should be the effect of their being recorded : but, when it introduced the new provision, declaring “ that title bonds or other written contracts in relation to land may be proved, certified or acknowledged, and recorded, in the same manner as deeds for the conveyance of landit went on to add, that “ such proof, acknowledgement or certificate, and the delivery of such bond or contract to the clerk of the proper court to be recorded, shall be taken and held as notice to all subsequent purchasers, of the existence of such bond or contract.” Now, it is obvious, that this section was not intended by the legislature to embrace the case of mortgages and deeds of trust, for they had been acted on in the former parts of the act: it related to contracts, not to conveyances, such as mortgages and deeds of trust. This section shews, and indeed ex *388 pressly declares, that the recording of a mere contract concerning land, shall be notice of its existence. Yet, when we advert to the sections concerning the recording of mortgages and deeds of trust, we find no provision as to what shall the effect of their being recorded. Whence this omission ? Surely, not because their being recorded ought not to be notice, equally with'the recording a mere contract, but solely because the legislature entertained no doubt, that the law was always so, in relation to deeds of trust and mortgages. If it had entertained doubt about it, it would, when speaking of recording mortgages and deeds of trust, have taken care to remove that doubt by declaring in express terms, (as it did in relation to title bonds and contracts), that their being admitted to record, should be notice of their existence, to all subsequent purchasers.
I am of opinion to affirm the decree.
If, however, I had concurred with the other judges, as to . the effect of recording the deed of trust, I should then have been of opinion, that Doswell ought to be protected, not only in casp of his having paid the whole of the purchase money, before he received actual notice of the existence of the deed, but, in case he had made only partial payments before such notice, that he should be protected to the extent of such payment.
I have only to add, that I regret that a case involving a principle of such vast importance, should have come before a bare court, and that the division of the court should leave the community in doubt, as 'to what the law is on this interesting subject.
Decree reversed.