# Staunton.

## L. C. MARSHALL v. E. V. JAMESON.

September 23, 1926.

Absent, West, J.

1. EJECTMENT—*Plaintiff's Title—Estoppel of Defendant to Claim Against His Own Deed—Case at Bar.*—In the instant case, an action of ejectment, by the record the title of the plaintiff to the land in controversy, a narrow strip, was perfectly clear. The courses and distances disputed were clearly set out in the commissioner's report in a suit under the decree in which the land was sold to defendant, and also in the deed of defendant to his sister who was plaintiff's predecessor in title. The controversy arose because the defendant alleged that a certain old fence and not the line shown by the conveyances was the true line. Defendant's sister testified that at the time of her purchase there was an old fence and that it was the line between herself and her brother. The defendant testified to the same effect. It was apparent, however, that although nearly parallel with the line, this old fence was never on the true line.

   *Held:* That defendant was estopped from denying the metes and bounds clearly specified in his own deed.

2. EJECTMENT—*Instructions—Estoppel of Grantor to Dispute the Metes and Bounds Set Out in His Deed—Conflicting Instructions—Case at Bar.*—In the instant case, an action of ejectment, the court instructed the jury that if they should believe from the evidence that defendant sold the land to plaintiff's predecessor in title and that the land passed by a succession of conveyances to plaintiff, the plaintiff had the legal right to rely on the metes and bounds in that deed, and defendant could not deny the said metes and bounds.

   *Held:* That this instruction correctly told the jury that defendant could not claim against his own deed; and, that further instructions for the defendant permitting the defendant to contradict the very deed which the jury had been told that he could not contradict were conflicting and erroneous.

3. COVENANTS—*Estoppel—Denial by Grantor that Estate Described Passes by Deed.*—A covenant of warranty works an estoppel, and the reason usually given is that the estoppel prevents circuity of action. This, however, is not the only ground upon which an estoppel arises. The

rule is well established that where the deed recites or affirms, expressly or impliedly, that the grantor is seized of a particular estate which the deed purports to convey, and upon the faith of which the bargain was made, he will be thereafter estopped to deny that such an estate was passed to this vendee, although the deed contains no covenant of warranty at all. And the rule accords with common honesty and fair dealing.

4. COVENANTS—*General Warranty—Right of Successive Grantees to Rely on the Warranty.*—Where a deed contains a covenant of general warranty, one who claims under the chain of title through the grantor has the right to rely upon that covenant.

5. REAL PROPERTY—*Disclaimer of Freehold Estate—Deed.*—It is well settled law in Virginia that the disclaimer of a freehold estate can only be made by a deed, or in a court of record.

6. BOUNDARIES—*Agreement as to Boundaries—Parol Agreement to Establish Boundaries.*—In the case of disputed boundaries, the parties may agree upon a line, by way of compromise, and if they take and hold possession up to that line the requisite statutory period, the mere possession will, in time, ripen into title. But no mere parol agreement to establish a boundary and thus exclude from the operation of a deed land embraced therein can divest, change or affect the legal rights of the parties growing out of the deed itself.

7. BOUNDARIES—*Application of the Rules as to Disputed Boundaries where there is no Dispute—Case at Bar.*—In the instant case, an action of ejectment, there was no pretence that there was ever any disputed line between the parties or doubt suggested as to the true line until this controversy arose, after the plaintiff had acquired his title relying upon the deed to defendant and defendant's deed to his predecessor in title. Hence the effort of the defendant to introduce into the case the rules which apply where there has been a compromise of a controversy between adjacent landowners cannot be made effective in the instant case.

8. APPEAL AND ERROR—*Judgment by Appellate Court.*—Under the evidence in the instant case, the jury should have found for the plaintiff, and the court should have sustained the motion of plaintiff to set aside the verdict of the jury for defendant and entered judgment in plaintiff's favor, therefore, the Supreme Court of Appeals entered the judgment which the trial court should have entered in favor of the plaintiff.

Error to a judgment of the Circuit Court of Pulaski county, in an action of ejectment. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*O. C. Brewer* and *R. L. Lindsay*, for the plaintiff in error.

*H. C. Gilmer* and *John S. Draper*, for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

This is an action of ejectment brought by Marshall, the plaintiff, against E. V. Jameson, in which there has been a verdict and judgment for the defendant.

The plaintiff showed that one H. A. Jameson died in 1892 seized and possessed of a tract of land containing nearly 300 acres; that in a chancery suit brought for the purpose of settling his estate 87.14 acres thereof, of which the boundaries were clearly defined, were assigned to his widow, Sarah E. Jameson, as dower, while the residue, containing 204.935 acres, together with a reversion in the 87.14 acres so assigned as dower, were sold under decrees in that suit. E. V. Jameson, a son of H. A. Jameson, and his mother, the widow, became the purchasers of the larger tract, together with the reversion in the dower. The property was thereupon conveyed March 18, 1897, by a special commissioner, and on the same date E. V. Jameson, the defendant here, conveyed the larger tract to his half sister, Annie J. Simmerman, with general warranty describing it and the dower tract by metes and bounds in accordance with the commissioner's report, retaining his reversion in the dower tract upon which he resided with his mother. He continued to manage the dower tract for her until her death. On January 2, 1919, Mrs. Simmerman, by deed with general warranty, con-

veyed the property (with certain exceptions which are immaterial here) to Kersey and Hall, in which the dower tract is again described by the same metes and bounds, and the plaintiff, L. C. Marshall, has since acquired the residue of the 204.935 acre tract by *mesne* conveyances. The widow, Sarah E. Jameson, held possession of the dower tract until her death, May 19, 1917, and thereupon the reversion therein passed to E. V. Jameson, the defendant.

[1, 2] In the commissioner's report which assigned the dower as severed from the residue of the tract, the area of the entire tract with its metes and bounds, courses and distances, and of the dower also are carefully stated. The courses and distances and the line here disputed are repeated in the deed of E. V. Jameson to his sister, Mrs. Simmerman, and accord with the description contained in the commissioner's report. By the record, then, the title of the plaintiff to the land in controversy is perfectly clear   The land in dispute here is a narrow strip containing 7.25 acres, and the controversy arises because the defendant, Jameson, alleges that a certain old fence and not the line shown by the conveyances as the true line between the dower and the residue of the tract, because agreed upon between his mother, himself and his sister, Mrs. Simmerman, after his conveyance to Mrs. Simmerman; and he claims title to the land in controversy because of this understanding and claim of continuous possession.

It is not often that we find in actions of ejectment a title so clearly established by the record as is the plaintiff's title here. The particular line in controversy is repeatedly stated, originally in the report of the commissioners and thereafter in the several conveyances in this language: "Thence leaving the creek N. 9° E. 1,459.4 feet to a stake," as constituting

the eastern line of the dower tract and one of the boundaries of the larger tract.

To show a superior title and maintain the issue on his part, the defendant introduced his sister, Mrs. Simmerman, who testified that at the time of her purchase there was an old fence, and that it was the line between herself and her brother, and that as long as she owned the land they both considered the old fence to be the line; that she never made claim to the land east of the old fence; and that E. V. Jameson had possession of the land east of the fence from the time she purchased it until she sold it in January, 1919; that her vendees understood that they were buying to the old fence, which they denied. The defendant himself testified to the same effect, that the old fence was on the line and had been recognized as such by all the parties. It is perfectly apparent, however, that although nearly parallel with the line, this old fence never was on the true line.

Under this state of facts, the trial court instructed the jury as to the chain of title of the plaintiff, and then, among other instructions, gave this, marked No. 2:

"The court further instructs the jury that if they shall believe from the evidence that E. V. Jameson sold said land to Mrs. Annie J. Simmerman by metes and bounds, and that the said lands passed by a succession of conveyances to the plaintiff, that the plaintiff has the legal right to rely on the metes and bounds in said deed, and that E. V. Jameson cannot deny any of said metes and bounds contained in said deed."

It is seen from this instruction that the court correctly told the jury that E. V. Jameson could not claim against his own deed, and nevertheless at the same time gave for the defendant instructions "A" and "B" which read thus:

"A. The court instructs the jury that while the plaintiff cannot deny the metes and bounds as set forth in the commissioners' report or deed, yet if they believe from the evidence that the fence in question was the line and so accepted by E. V. Jameson and Mrs. Simmerman they should find for the defendant.

"B. The court instructs the jury that if they believe from the evidence that the fence in question was the line to the dower land that they should find for the defendant regardless of the description of the dower land in the commissioners' report."

These two instructions cannot be reconciled with that given for the plaintiff. The instructions given for the plaintiff, to the effect that Jameson was estopped from denying the metes and bounds so clearly specified in his own deed, is correct and fully supported by authority. When the court told the jury, in instructions "A" and "B," given for the defendant, that notwithstanding the commissioners' report and his deed based thereon, they might find that the old fence was the true dividing line, it permitted the defendant to contradict the very deed which the jury had been told that he could not contradict.

The instructions given for the plaintiff are well supported by these and many other cases:

[3] In *Reynolds* v. *Cook*, 83 Va. 821, 3 S. E. 712, 5 Am. St. Rep. 317, this is said: "On the other hand, a covenant of warranty works an estoppel, and the reason usually given is that the estoppel prevents circuity of action. *Doswell* v. *Buchanan's Ex'ors*, 3 Leigh [30 Va.] 365 [23 Am. Dec. 280]; *Gregory* v. *Peoples*, 80 Va. 355. But this is not the only ground upon which an estoppel arises. The rule is well established that where the deed recites or affirms, expressly or impliedly, that the grantor is seized of a

particular estate which the deed purports to convey, and upon the faith of which the bargain was made, he will be thereafter estopped to deny that such an estate was passed to this vendee, although the deed contains no covenant of warranty at all.   And the rule accords with common honesty and fair dealing."

[4] We have here in the deed from Jameson to his sister the covenant of general warranty, and the plaintiff who claims under the chain of title through him has the right to rely upon that covenant.

In the case of *Rensselaer* v. *Kearney*, 11 How. 297, 13 L. Ed. 703, this is said:   "Where the deed bears on its face evidence that the grantor intended to convey, and the grantee expected to become invested with, an estate of a particular description or quality, and that the bargain had proceeded upon that footing between the parties, then, although it may not contain any covenants of title, in the technical sense of the term, still the legal operation and effect of the instrument will be as binding upon the grantor and those claiming under him, in respect to the estate thus described, as if a formal covenant to that effect had been inserted, at least so far as to estop them from ever afterwards denying that he was seized of the particular estate at the time of the conveyance."

The rule is thus expressed in *Nye* v. *Lovitt*, 92 Va. 717, 24 S. E. 348:   "In order to avoid circuity of action, it has long been the rule that a vendor of land was estopped from setting up an after-acquired title against his vendee, where there was a warranty or covenant for title, if the eviction of his vendee would result in an action upon the covenants.   But if the land is conveyed without warranty or covenant for title, the grantor is not, in general, estopped from setting up an after-acquired title.   The later cases,

however, have modified this rule; and it is now established that, although there is no warranty, the grantor, in the interest of honesty and fair dealing, will be estopped from asserting an after-acquired title against his vendee, where the deed of conveyance recites or affirms that the grantor is seized of a particular estate, which the deed purports to convey, and upon the faith of which the sale was made. *Doswell* v. *Buchanan*, 3 Leigh 365, 388 [23 Am. Dec. 280]; *Van Rensselaer* v. *Kearney*, 11 How. 297, [13 L. Ed. 703]; *French* v. *Spencer*, 21 How. 228, [16 L. Ed. 97]; *Burtners* v. *Keran*, 24 Gratt. [65 Va.] 42; *Reynolds* v. *Cook*, 83 Va. 817, 821 [3 S. E. 710, 5 Am. St. Rep. 317]; 2 Minor's Inst. (4th ed.) 710, and cases cited; Rawle, Cov. (4th ed.) 375-456." *School Board* v. *Smith*, 134 Va. 104, 113 S. E. 868.

[5, 6] The instructions "A" and "B," which tell the jury that if Jameson and his sister agreed upon the old fence as the line between them, they should find for the defendant, regardless of the description, metes and bounds by which the land had been sold and conveyed, not only contradict the principle to which we have referred, but violate another rule which is thus stated in *McMurray* v. *Dixon*, 105 Va. 611, 54 S. E. 483: "It is settled law in this State that the disclaimer of a freehold estate can only be made by deed, or in a court of record. In the case of disputed boundaries, the parties may agree upon a line, by way of compromise, and if they take and hold possession up to that line the requisite statutory period, the mere possession will, in time, ripen into title. But no mere parol agreement to establish a boundary and thus exclude from the operation of a deed land embraced therein can divest, change or affect the legal rights of the parties growing out of the deed itself. *Suttle* v. *R. F. & P. R. Co.*, 76 Va. 284, 286-7; *Fry* v. *Stowers*, 98 Va. 417, 36 S. E.

482." And the rule is repeated in *Sutherland* v. *Ensmiller*, 111 Va. 510, 69 S. E. 363.

[7] In this case there is no pretence that there was ever any disputed line between the parties or doubt suggested as to the true line until this controversy arose, after the plaintiff, Marshall, had acquired his title, relying upon the deeds, and hence the effort of the defendant to introduce into the case the rules which apply where there has been such a compromise of a controversy between adjacent landowners cannot be made effective. Jameson, the owner of the dower tract, is bound by the commissioner's report and the deed to him based thereon, which clearly establishes this disputed boundary and designates all the other lines by metes and bounds, courses and distances.

There are other questions in the case, as for instance whether the claim of Jameson as the holder of the reversion could tack on the possession of his mother as tenant in dower in order to show the period of statutory adverse possession; but it is unnecessary to prolong this opinion by a discussion of this, because the defendant here is estopped by his own deed from claiming against his own covenant of general warranty.

[8] Our conclusion is that the instructions "A" and "B," given for the defendant, are erroneous and against the evidence; that the instruction 2, given for the plaintiff, is correct; and that the verdict for the defendant is against the evidence and unsupported by evidence. Under the evidence the jury should have found for the plaintiff, and the court should have sustained the motion of the plaintiff to set aside the verdict and enter judgment in his favor. This court will enter here the judgment which the trial court should have entered in favor of the plaintiff for the 7.25 acres of land to which he has shown such a clear title.

*Reversed.*