Staples, J.
The first question to be considered is, whether the court below erred iu admitting as evidence the record of the proceedings and decree of the Circuit court of Edgar county, Illinois. It is insisted that this record was not competent evidence for any purpose; for the reason, that the defendants in that suit were not residents of the State of Illinois, were not served with process, or otherwise notified of the institution of the *60 suit. It is true that none of the defendants lived in that State; but the land is located there, and that is sufficient to give the court jurisdiction. It is the settled . . . . ,. . , , , . . doctrine ot the common law, that the Lex rei sitae governs exdugjye^ in respect to the rights of parties, the modes of transfer and alienation, and the nature and extent of the interests to be alienated. And, although property within a country does not make the owner generally a subject of the sovereign, it subjects him to the jurisdiction secundum quid et aliquo modo. And as immovable property is to be held “according to the laws of the country where it is located, controversies relating to such property can only be decided in the State where it belongs.” Story, Conflict of Laws. S. p. 552, 557, 592.
How, it is clear that if Cornelius and Mary Burtner had been before the Illinois court by appearance or the service of process upon them personally, the record of the suit, so far as it tended to establish the eviction of the plaintiff, would have been competent evidence in the present action.
The land being in Illinois, the non-residence of Cornelius and Mary Burtner could not deprive the plaintiff' of his right to institute his suit there, provided the statutes of Illinois conferred upon the courts authority, in proper cases, to proceed against absent defendants. That these statutes do authorize, proceedings and decrees against non-residents, is unquestioned. The practice in such cases is substantially the same as that in Virginia.
The plaintiff has, therefore, done no more nor less than was his clear right to do. He brought his suit in the courts of the country where the land is situate, and he has perfected it according to the laws of that country. Decrees and judgments rendered in such suits are *61 treated, to a certain extent, as proceedings in rem; they bind the property which is the subject of the suit; though they create no personal charge against the defendants. Whether they are of a conclusive character, it is not material to enquire, as no such question arises iii this case. Conceding that they are examinable when introduced collaterally in foreign courts, they are certainly prima facie evidence, so far as they affect the title or status of the property which is the subject of adjudication. Cochran v. Fitch, 1 Sandf. Ch. R. 142; Rootes' ex’or v. Tompkins’ trustees, 3 Gratt. 98; Boswell’s lessee v. Otis, 9 How. U. S. R. 336; Green v. Van Buskerk, 7 Wall, U. S. R. 139; Cooper v. Reynolds, 10 Wall. U. S. R. 308. See especially Freeman Judgments, sec. 607, 611, 612.
There is no difficulty in applying these principles to a controversy between vendor and vendee. When the vendee sues upon the covenant of warranty, it devolves upon him to show an eviction, or what is equivalent to it, under a paramount title. This fact may be established by the production of the record of the recovery in ejectment or other real action, brought by the adverse claimant, in connection with evidence of a change of possession. If the vendee has given the vendor proper notice of the pendency of the ejectment, and required him to defend it, in the action upon the covenant, the judgment in ejectment is evidence, not only of the recovery, but of the existence of a valid paramount title. The vendee is, however, not compelled to give the notice. When he omits it, the vendor is not regarded as a party or privy to the adverse proceeding; and as against him, the record cannot be relied on to show a paramount title. It is, however, prima facie evidence of a recovery and of the eviction ; the vendee being then required to establish, by independent evidence, that the recovery was by lawful *62 right and paramount title. Rawle on Covenants for Title, 225 to 232; 2 Barb. R. 171.
According to this view, the plaintiff might have given defendants notice of the Illinois suit; it would have been better that he should have given it, but it wits not essential to the maintenance of this action, or to the admissibility of the record as evidence. Having failed to do so, the record is evidence of a recovery and eviction only, open to examination by defendants for fraud or collusion and want of jurisdiction in the court.
The rule is not varied by the fact that the plaintiff himself was the party suing in the courts of Illinois, and thereby seeking an adjudication of the validity of his title; for whether-the vendee yields the possession J:o the rightful owner, or is evicted by him, or brings-his suit ineffectually to recover the possession, the' result is the same. In either case there is a breach of the covenant.
The authoi’ities • are not entirely agreed whether a mere recovery sufficiently establishes an eviction without some evidence of a disturbance or cessation of the possession. The decision of this point is not necessary in this case,- inasmuch as evidence was adduced tending to show that the plaintiff was at no time in possession of the land which was the subject of controversy. It is to be observed that the plaintiff did not offer the record as conclusive of any question. There is nothing to show it was so treated by the court or by the jury. Ho complaint is made that defendants were not permitted to impeach it for Avant of jurisdiction in the' court, or for fraud in obtaining it; or even that they were precluded from showing it was erroneous, or against equity and conscience. Bor aught that appears to the contrary, each and all these defences were open to the defendants. All that appears in. connection with this record is, that the *63 defendants objected to it as evidence, and the objection was overruled by the court. The ruling was clearly correet, unless there is more weight in defendant’s other ’ ° objections.
One of these is, that the Circuit court of Edgar county, sitting in chancery, is not authorized to adjudicate questions of title to land; and the plaintiff’s remedy was by action of ejectment. The Circuit court of Edgar county is a court of general jurisdiction, exercising both common law and equity powers vested in the same judge. Thus constituted, the court had plenary jurisdiction of the “subject-matter of the suit. Whether this jurisdiction belonged to the common law or equity side of the court, depends upon the course of practice and precedent in the State of Illinois. The jurisdiction of equity, as distinguished from common law, in a large majority of cases is not defined or fixed by any statute. It depends upon principles and precedents announced by equity judges and by learned commentators. The practice varies in different States and at different eras, according to an infinite variety of circumstances. It may be, that in Virginia equity has no jurisdiction to settle the title or bounds of land between adverse claimants. But even here there are well established modifications of this rule. I shall not stop to enumerate them. They may be found in the reports and in the works on equity jurisprudence. When the decree of a sister State court is offered here as evidence, is the judge to look into the bill and proceedings to determine whether the case comes within the rule, or some qualification or exception to it; and if he is of opinion the jurisdiction appertained to the common law rather than the equity side of the foreign court, is he to declare the decree null and void ? Ho case has gone that far. It is impossible to foresee the mischiefs and confusion that would arise *64 in the administration of justice, if this was the established doctrine of the courts.
If a court of general jurisdiction may, under some circumstances, on its equity side, settle a controversy C0Ucermng the title to land, it is the province of the court in which the controversy is pending, to determine for itself whether those circumstances exist which justify the adjudication; and however erroneous the decision may be, it is of universal obligation, until reversed by the proper appellate tribunal. This, I think, is a well settled principle. It is fully sustained by the case of Cox et als. v. Thomas, 9 Gratt. 312; where the whole question is fully considered, and all the principal authorities reviewed by Judge Allen. In the course of his opinion, he declares: “If the jurisdiction of the court extended over that class of cases, it was the province of the court to determine for itself, whether the particular case was one within its jurisdiction. And the correctness of such judgment can be enquired into only by some appellate court.” The* same rule must be applied to the Circuit court of Edgar county, in the exercise of its chancery powers. It was the province of that court determine whether the case before it was within its jurisdiction; and until reversed, its decree must be deemed valid to the same extent as if pronounced in a case of acknowledged equity jurisdiction.
The next objection is, that the decree was obtained by fraud — fraud apparent on the face of the record; and this was still more manifest when the evidence came to be heard on the trial of the cause. This question of fraud in procuring the decree is, for the first time raised in this court. At any rate, it does not distinctly appear it was brought to the attention of the court below as a specific ground of objection to the record as evidence. Are we to assume that it was? I think not. The defend *65 ants may have preferred to take their chances upon that question before the jury. "Whether they did or not, we have no means of determining, as the evidence is not before us; the judge having declined to give a certificate, in consequence of the contradictory character of the testimony. It is to be inferred, however, from the statement of counsel, that the question was brought to the consideration of the jury: for he tells us, that the plaintiff’s fraud in obtaining the decree was made more manifest when the evidence came to be heard on the trial. If we are permitted to consider this statement of counsel, it would seem that the whole matter was the subject of investigation before the jury; and they, by their verdict, have gone very far in relieving the plaintiff of the charge. In the face of this finding — in the uncertainty as to what occurred at the trial — it would be a very strong exercise of an appellate jurisdiction for this court to say that the record so conclusively shows fraud on its face as to require its exclusion from the jury, and to render a new trial of the cause as necessary and proper.
I admit that the record does not exhibit the plaintiff' in a very favorable light; but the whole subject was peculiarly proper for the jury. It was more just to submit it to them, and thus afford the plaintiff an opportunity of explaining all the facts and circumstances connected with the institution and conduct of the Illinois suit, rather than for the court to cut off all investigation by arbitrarily rejecting the evidence.
After the evidence was concluded the defendants asked the court to give the jury three instructions; which were objected to by the plaintiff; and the instructions refused. To this ruling the defendants excepted.
The first instruction affirms substantially, that the first the land with *66 warranty to Ezra Burtner, and Ezra Burtner having ° conveyed it with general warranty to Cornelius and Mary Burtner, the subsequent conveyance of the same- *** land by the defendants to the plaintiff did not vest any |jeneficiai interest in the plaintiff; but said conveyance enured to the benefit of Cornelius and Mary Burtner exclusively: and so the deed in favor of the plaintiff failing to take effect, the covenants of warranty therein contained also failed to take effect. The proposition here asserted is, that where a deed is executed containing a covenant of warranty, and the vendor afterwards acquires an estate which is within the scope of the covenant, such after acquired estate enures to, and is actually transferred to the purchaser, by operation of the doctrine of estoppel. In other words, the warranty creates an estoppel which takes effect on the subsequent interest, and passes it to the vendee.
How, this proposition may be correct when applied to fines, feoffments and other common law recoveries. In this class of cases, it seems that the warranty not only concluded the grantor or feoffer, but it possessed the high function of actually transferring the after acquired estate or interest. But deeds of bargain and sale and other conveyances, operating under the statute of uses, have never had any such effect. They only pass such estate as the grantor has at the time; the warranty merely serving as a remedy, or operating to estop the party from denying the ownership of the estate at the time of the conveyance executed. In such cases the, principle of the estoppel is, that if a person conveys; land with general warranty, and does not own it at the time, but afterwards acquires the same land, such acquisition enures to the benefit of the grantee; because the grantor is estopped to deny, against .the terms of hie warranty, that he had the title in question; but it does' *67 /not operate actually to transfer the estate subsequently 1 acquired.
I admit that this view is not in accordance with a .... number of American decisions, which give to the estoppel the effect of passing an interest,; but it is sustained by the English cases, by many well considered decisions in the United States, and by the most approved text writers of the present day. See Judge Carr’s opinion in Doswell v. Buchanan’s ex’ors, 3 Leigh 365, 407; 1 Smith Lead. Cases, marg. 626; Bigelow on Estoppel, 337, 360-3; Rawle on Covenants for Title, chap. 11, pages 375 to 456 inclusive.
According to this view, and it seems to be a sound •one, the interest conveyed by defendants to plaintiff enures to the benefit of Cornelius and Mary Burtner, under operation of plaintiff’s warranty in their favor; and that warranty estops plaintiff to claim the estate against them; but it does pass such interest, or operate as a conveyance. As against the plaintiff, the defendants are not bound by any such estoppel; and they can derive no benefit from it. It is not for them to say their deed vested nq beneficial interest or title in the plaintiff. They'-cannot avoid the effect of their warranty by claiming the benefit of an estoppel created by the law solely for the benefit of Cornelius and Mary Burtner and those claiming under them.
But if it be conceded that defendants’ deed enures to the benefit of Cornelius and Mary Burtner exclusively, it does not therefore necessarily follow, that the plaintiff -cannot maintain an action thereon. It may be true that .an assignee can only take advantage of the covenant of warranty when an estate passes by the deed. This, however, is only because at common law a covenant, like •every other chose in action, was incapable of assignment. It could only pass as an incident to an estate; *68 and if the grantee had no estate, his assignment could ° not transfer the covenant of warranty. In such ease-there was nothing to which the covenants could attach.
A very brief consideration will show that these principles do not apply to the original contracting parties. Warranty, as known to the earlier common law, was exclusively a covenant real, running with the land. The remedy for its breach was not in damages, but primarily in the recovery of other lands. In this sense, however, ifhas since been discontinued; and warranty is now considered a personal covenant, sounding merely in damages. Under our statutes -and decisions it is treated as a covenant to warrant and defend, while it has also all the effect of a covenant for quiet enjoyment. Tabb's adm'r v. Binford, 4 Leigh 132; 2 Rob. Prac. 86. It creates personal rights, wholly independent of the estate, and which may survive long after it is extinguished, for the benefit of the covenantee. When the deed containing the eovenaut of warranty passes no estate, it is considered a covenant in gross, to be enforced, and only enforced, by the covenantee or his representatives. The contract being made with him directly and in person, he takes the benefit of it by virtue of his contract, and not as incident to the estate. 2 Lomax Dig. 260-8; 1 Smith’s Lead. Cases 158.
This rule of construing the warranty as a covenant in gross for the protection of the covenantee, where no estate passes, attains substantial justice, and effectuates the intention of the parties. In Virginia the rule is absolutely necessary to prevent the gravest injustice and wrong. The covenant of warranty is almost uniyersally the only covenant resorted to under our system of conveyancing. And in no other State has the government pursued to the same extent the policy of granting the same lands to successive grantees. As the first patent *69 confers both, title and seizin, the second patent confers neither; and as a necessary consequence, the deed of the junior patentee in many instances passes no estate whatever. In all this class of cases, according to the theory of the learned counsel for defendants, as the deed does not operate to pass any estate the warranty fails to take effect. It is wholly valueless to the purchaser when most needed for his indemnity against a paramount title. As was said by Judge Moncure, in Dickinson v. Hoomes, 8 Gratt. 353, 399, “of what avail would be these covenants if an outstanding paramount title would render them ineffectual. They could only be broken by an eviction or ouster by title paramount; and yet the very existence of such an outstanding title would render the covenant ineffectual. So far from affording any protection to the assignee, they would afford none, even to the covenantee.”
It follows from what has been said, the court did not -err in refusing to give defendants’ first instruction.
The second instruction declares, that if the plaintiff, at the time of the execution of the deed by the defendants to them, had notice of the rights of Cornelius and Mary Burtner to the land in question, and it was his purpose, in taking the deed, to secure the land to him■self, the defendants also being apprized of the title of Gornelius and Mary Burtner, the covenant was thereby so far tainted with fraud as to prevent a recovery in this action. This instruction was doubtless intended to assert the common law doctrine of. ex turpi causa non oritur actio. -
How far this doctrine applies to a case of this character, it is not material now to enquire, as the point involved may be disposed of upon other grounds, which do not admit of much controversy under the previous rulings of this court. In the case of Harris v. Harris’ *70 ex'ors, decided at the last Staunton term, 23 Gratt.737,thiscourt held that a bond executed by a debtor in fraud of' his creditors, though void as to them, is nevertheless valid between the parties; and that the debtor will not be permpqecj set Up pis 0wn fraud in avoidance of the bond-The whole question is fully considered in that case, and all the authorities carefully examined by Judge Christian. The same principle applies to a grantor executing a deed in fraud of a previous purchaser from him. The deed from the defendants to the plaintiff, with all its covenants, is valid between the parties. Whatever-fraud the plaintiff meditated they were privy to and participated in; and they cannot now rely upon their own turpitude to defeat the covenants contained in their deed.
The third instruction affirms that if the jury are satisfied that the plaintiff took the deed from the defendants with intent merely to remove a cloud upon the title of Cornelius and Mary Burtner,who were his grand children, and this object has been accomplished, there has been no breach of covenant. It does not appear there was any evidence whatever before the jury of the supposed intention of the plaintiffs in taking the deed. If the defendants desired to rely upon the point here, it was incumbent upon them to spread upon the record so much of the testimony as would show the relevancy of the-instruction proposed. As they have failed to do so, this court cannot say there was any error in refusing it.
But the instruction is objectionable in itself. It proposes that the jury, shall enter into an examination of the plaintiff’s private reasons for taking a deed, in order to vary and defeat the legal operation and effect of the most solemn covenants taken by him for his protection. This would be to substitute parol evidence, in its worst form, for the written contract of the parties. It would *71 be, indeed, to say that a plain covenant, express and unequivocal in its terms, is not a covenant. It is to be conclusively presumed that the plaintiff, in taking a deed with general warranty, intended the covenant for his own security against any and every paramount title; and no averment can be received to rebut this plain and very reasonable legal intendment.
The defendants also excepted to an instruction given at the instance of the plaintiff’. This instruction is to the effect that the covenants in the defendants deed to plaintiff, are binding upon defendants, although the jury may believe the execution of said covenants was induced by the fraudulent misrepresentations of the plaintiff’ as to the effect of said covenants. The only question we are now to consider, is, whether this instruction was proper under the pleadings in the cause. It is very clear, according to the common law rule, that in a court of common law fraud may be given in evidence to vacate a deed, if the fraud relates to the execution of the instrument. But where the deed -was procured by fraudulent misrepresentation, relief can be obtained only in a court of equity. Under the 5th section of chap. 172, Code of 1860, the defendant in any action is now permitted to allege and show any such fraud in the procurement of the contract as would entitle him to relief in a court of equity. In this case issue was joined upon the pleas of covenants performed, covenants not broken, and a general plea of non est factum. Leave was given the defendants to file a special plea of non est factum in "writing; but it does not appear that any such plea was ever filed. And the question is, whether the defence contemplated by the statute, can be made under either of these pleas. It is very manifest from the whole scope and spirit of the statute, that a special plea should be filed, averring the fraud, or special circumstances, which entitle the defend- *72 an^ re^ef ia equity- And it would seem that the facts should be set forth with sufficient precision and certainty aPPiaze the plaintiff of the character of the defence intended to be made, and to enable the court to decide whether the matter relied on constitutes a valid claim to equitable relief. This is plainly to be inferred from the language of the 6th section, in which it is provided: “ If any such plea be rejected by the court as bad, or adjudged insufficient on demurrer, or if when issue in fact is joined therein, such issue be found against the defendant, he shall be barred-of all relief in equity, upon the matters alleged in the plea.
These provisions plainly contemplate a plea stating the whole matter of defence with such particularity that if found against the defendant oh demurrer, or by the jury, he shall be barred of all relief in equity upon the same ground. Whether the defendant is so barred, is to be determined, not by parol evidence of what occurred on the trial at law, but by a reference to the form and matter of the plea itself. The plea must, therefore, disclose the ground of the defence in all cases under this statute.
In this case no such plea having been filed, the jury was rightly instructed that the defendants were bound by the covenant, notwithstanding it may have been executed under the influence of fraudulent misrepresentations on the part of the plaintiff'.
The learned counsel insists, however, that the evidence establishing the fraudulent misrepresentations was admitted without objection; and it was the duty of the jury to base their finding upon the evidence before them. The question of fraud was not in issue. All testimony upon that point was, therefore, irrelevant; and it was competent for the plaintiff'to object to its introductioh, or to move to exclude it, or to ask the court to instruct *73 the jury to disregard it. The latter course was pursued; and it is not perceived that the defendants were in any manner prejudiced by this mode of raising the question. Kincheloe v. Tracewell, 11 Gratt. 600.
I have thus considered all the material points presented by this record; and am satisfied the judgment should be affirmed. This result is the more satisfactory because it is substantially just. The land which has been in controversy is in the possession of Cornelius and Mary Burtner, to whom it rightfully belongs; and the defendants have only been required to refund to the plaintiff a consideration to which they have no claim in law or equity, as the case is now exhibited by the record.
The other judges concurred in the opinion of Staples, J.
Judgment aeeirmed.