# Richmond.

## GREGORY v. PEOPLES.

### MARCH 19th, 1885.

1. WARRANTY OF TITLE—*Estoppel.*—Where one conveys land with general warranty, whereof at the time he has not the title, but afterwards acquires it, such acquisition enures to the grantee. *Raines* v. *Walker,* 77 Va. 92. The warrantor is estopped from denying he had the title.

2. IDEM—*Bankruptcy—Estoppel.*—A discharge in bankruptcy releases the warrantor from liability for covenants broken, but does not affect the estoppel, because the covenant runs with the land. *Bush* v. *Person.* 18 Howard, 82.

3. IDEM—*Idem—Resulting trust.*—Where one having only the equitable title, conveys the land with general warranty; then is discharged in bankruptcy ; and afterwards, *with another's money,* buys the land, at a resale thereof for the unpaid purchase money, and obtains to himself a conveyance thereof, such title *does not* enure to his grantee, and he is *not estopped* to deny he had the title, because a trust resulted in favor of him whose money bought the land.

4. FRAUD—*Purchaser for value without notice.*—On doubtful evidence fraud must not be assumed. It must be distinctly alleged in the bill, and clearly proved. And so, of the defence of purchaser for value without notice.

Appeal from decree of circuit court of Mecklenburg county, entered May 29th, 1882, in suit of Robert H. Gregory against J. M. Sloan, sheriff, and administrator of Lewis J. Peoples, deceased, John R. Haskins and N. M. Norwood. In 1863, Haskins conveyed with general warranty land in said county to Peoples. He had not then the legal title. A part of the purchase money due from him was unpaid, and the title was withheld. In 1869, a suit was brought to collect the same, and the land was resold

therefor. With Norwood's money, Haskins purchased the land at the resale, and the title was conveyed to him in 1870. But, in 1868, he had received his discharge in bankruptcy. Peoples occupied the land from the date of his purchase in 1863, till his death in 1879. Shortly before his death, he sold and conveyed it to Gregory, subject to certain judgments against Peoples in his lifetime. In 1880, Gregory filed his bill praying that his title might be cleared and quieted. He claimed that the legal title obtained by Haskins in 1870, enured to Peoples, and through him to his grantee; and that Haskins' warranty estopped him from denying he had the title. In March, 1880, the circuit court so decreed. Afterwards, Haskins and Norwood, who were non-residents, appeared and defended the suit. They set up Haskins' bankruptcy, and insisted that its effect was to release Haskins of the warranty, and that consequently his subsequent acquisition of the title did not enure to Peoples, and that a trust resulted in favor of Norwood, whose money had bought the land. In reply, Gregory contended that taking the deed in Haskins' name, was intended as a fraud on Norwood's creditors, and that no trust could result from a fraud. But there was no sufficient proof to establish any fraud, or that Norwood owed any debts. By its decree of May, 1882, the circuit court reversed the decree of March, 1880, and sustained both defences. From this decree Gregory appealed to this court.

*Finch & Atkins,* for the appellant.

*R. T. Thorp,* for the appellee.

LEWIS P., delivered the opinion of the court.

In respect to the first ground of defence relied on in the court below, little need be said. It was claimed that by his discharge in bankruptcy Haskins was released from the obligation of his

covenant to warrant the title to the land conveyed by him, and that consequently the subsequent conveyance of the legal title to him did not enure to the benefit of his grantee. This contention would be well-founded if the case of the appellant rested solely on the personal liability of Haskins, growing out of his covenant. But it does not. Such a covenant is not only one running with the land, for the breach of which the covenantor is liable in an action for damages, but is something more. By its operation a paramount title, subsequently acquired by him enures to the benefit of the covenantee, and in equity he is estopped from asserting that any outstanding title existed inconsistent with what he undertook to convey. It has therefore been held that a discharge in bankruptcy, while effectual to release the covenantor from liability in an action for a breach of the covenant, does not at all affect the estoppel. This is on the ground that, as the release is by force of the statute, and not by the act of the covenantee, or those claiming under him, no greater effect will be given to it than is warranted by the terms of the statute; and for the further reason that existing personal liability is not necessary to work an estoppel, and consequently there is no necessary connection between the personal liability of the debtor on his covenant and the estoppel which arises therefrom. Such was the decision of the supreme court of the United States, in a case arising under the bankrupt act of 1841. *Bush* v. *Person*, 18 How. 82. And what is there said as to the effect of a discharge under the act of 1841, equally applies to the act of 1867, under which the defendant, Haskins, was discharged.

Upon the second ground, however, the defence is fully sustained. It is true, as we have seen, that where land in which the grantor has only an equitable estate is conveyed by deed with general warranty, the subsequent acquisition of the legal title by the grantor enures to the benefit of the grantee and those claiming under him. *Doswell* v. *Buchanan's ex'or*, 3 Leigh, 365; *Burtners* v. *Keran*, 24 Gratt. 42; *Raines* v. *Walker*,

77 Va. 92. But in the present case the evidence is conclusive, and indeed, uncontradicted, that the purchase money for the land was wholly advanced by Norwood, and that in purchasing at the re-sale in 1869, Haskins acted as Norwood's agent, though the deed was made to Haskins. Under these circumstances a trust resulted in Norwood's favor, and consequently in equity Haskins must be regarded as holding the legal title as a mere trustee for Norwood. 2 Minor's Insts. 191; *Bank of the U. S.* v. *Carrington,* 7 Leigh, 566; *Kane* v. *O' Conners,* 78 Va. 76, and cases cited. No title, therefore, was acquired by Haskins upon which any estoppel growing out of his deed to Peoples can operate in the appellant's favor.

It is insisted, however, that Norwood's object in causing the deed to be made to Haskins, was to cover up his estate to defraud his creditors, and that no trust can result from a fraud. To the first branch of this proposition several answers are furnished by the record. In the first place, the evidence relied on to establish fraud is vague and unsatisfactory. It consists solely of the appellant's own deposition, in which he testifies to certain admissions which he says were made to him by Norwood and Haskins, to the effect that the deed was taken in the latter's name, because the former, who was a tobacco manufacturer, was at the time, "in some trouble with the revenue department, and that he did not want to have the deed made to himself until that was settled." It does not appear, however, what the "trouble" was, or that Norwood was indebted, or that any pecuniary demand had then, or has since, been asserted against him by any one. Haskins testifies that Norwood being liable as his surety on the bonds for the deferred payments, executed by him at the time of the first sale, requested him to attend the second sale and "make the land bring the debt," which he did, and that the deed was taken in his name because he transacted all the business. "That," he says, "was the reason, and the only reason that I know."

It is obvious that this testimony falls short of establishing the

fraud upon which the appellant relies. "Fraud," said the
court in *Hord's adm'r* v. *Colbert*, 28 Gratt. 49, "is not to be as-
sumed on doubtful evidence, or circumstances of mere suspic-
ion. The party alleging the fraud must clearly and distinctly
prove it.    *    *    If the fraud is not clearly proved as it is al-
leged, although the party against whom relief is sought may
not have been perfectly clear in his dealings, no relief can be
had."

Moreover, it appears that Peoples, the appellant's grantor,
had notice of the re-sale in 1869, and that he subsequently, and
before his conveyance to the appellant, who was his step-son,
acknowledged Norwood's title by becoming his tenant. This
is averred in Norwood's answer, and the averment is sustained
by the proof. Thus, in a letter written by him to Norwood,
dated August 24, 1876, he says: "I will take the land here an-
other year on the same terms as this year.    *    *    I will give
$150 for your interest in the land for next year." This letter
purports to have been written from the writer's post-office, which
was on the North Carolina side of the state line; and from this
fact it is argued by counsel for appellant that the land here re-
ferred to was a tract of land owned by Norwood, in the same
neighborhood, and lying in North Carolina. But this idea is
repelled by the circumstance, that the writer was at the time
living on the land in controversy, and also by the amount of
the rent offered. The sum offered was $150, and the evidence
shows, or strongly tends to show, that the annual rental value
of the North Carolina land did not exceed the sum of $75. In
addition to this is the testimony of the witness, W. A. Quincy,
who testifies, that after the sale in 1869, Peoples advised him to
buy of Norwood the land in controversy.

But independently of the evidence, the question of fraud may
be laid out of the case, inasmuch as no such issue is properly
raised by the pleadings. Fraud, since it must be clearly proved,
must be distinctly alleged; and here no such charge is to be
found in the bill. The only way in which it was sought to be

raised was by *the replications to the pleas of bankruptcy.* If intended to be relied on by the plaintiff, it should have been charged in the bill, and an opportunity thereby afforded the defendants to meet it in their answers. Kerr on Fraud and Mistake, 365. And the same may be said in respect to the claim, asserted for the first time in this court, that the appellant was a purchaser for value, and without notice of Norwood's claim, and therefore not affected thereby. It is not so charged in the bill, nor is it shown by the evidence, and the contrary is emphatically averred by Norwood in his answer. The decree is affirmed.

HINTON, J., dissented.

DECREE AFFIRMED.