# Jordan *v.* Chambers, Appellant.

*Deed—Title to coal—Separation of title—Adverse possession.*

1. A conveyance before the grantor has acquired title does not as against him vest title of itself by estoppel, but operates as an agreement to convey, which, when the title has been subsequently acquired, may be enforced in chancery.

2. The principle of estoppel as between the grantor and grantee is that such acquisition inures to the benefit of the grantee, because the grantor is estopped to deny that he had the title in question.

3. The estoppel of the grantor inures only to the benefit of his grantee, and those who were not privies or parties to the original conveyance can take no advantage of estoppel arising out of it.

4. Where a person having adverse possession of land makes a deed of the coal thereunder to three persons before the adverse possession has continued for the period of twenty-one years, the conveyance passes no title, and there is no severance of the coal; but if the holder of the adverse possession or his successor acquires title by the adverse possession for the statutory period he will hold the legal title to the coal in trust for the three grantees in the deed, and may be compelled by such grantees to execute to them a proper conveyance of the coal; but if the successor in the adverse possession, after the completion of the twenty-one years and after he has taken a deed for one-third of the coal from one of the grantees, sues in ejectment the holder of the record title, he is entitled to recover the whole fee in the land, and is not restricted merely to the surface and one-third of the coal.

5. The outstanding equitable title to two-thirds of the coal is of no avail to the record owner as against the holder of the legal title to the surface and coal, entitled under that title to possession of both. The estoppel created by the deed to the coal avails only in favor of the parties and privies, and the record owner is not a party or privy to the deed.

*Ejectment—Parties—Judgment—Res adjudicata.*

6. Where the plaintiffs and the original defendant in an ejectment

both claimed from a person who held the record title, and subsequently parties claiming the land by adverse possession are added as parties defendants in the ejectment, a verdict and judgment for the defendants, while conclusive against the plaintiffs, is not conclusive as between the defendant claiming by the record title and the defendants who claim by adverse possession.

Argued Nov. 1, 1909. Appeal, No. 136, Oct. T., 1909, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1904, No. 91, on verdict for plaintiff in case of Pauline M. (Handel) Jordan and W. P. Jordan, her husband, in right of said wife v. John A. Chambers. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Ejectment for land in Jefferson township.    Before KEN-NEDY, P. J.

The facts are stated in the opinion of the Supreme Court.

The court charged in part as follows:

[There was a severance until 1880, when Herman Handel, having bought the surface, purchased one-third of the coal from one of these parties that had purchased from Robb. He purchased the share of Mr. Keenan. It was conveyed first to Mr. Jack, who reconveyed it to Mrs. Keenan, and then it was bought by Mr. Handel some time in 1880. The purchase of the surface by him was about September 11, and he purchased the coal by deed of September 27, 1880. Then, I instruct you, there was a union of the surface and the coal, the title of the surface and the coal, and that Herman Handel, being in possession of the surface, after this purchase, was also in possession of the coal, holding it for himself and for these two other shares, for whom he would in law be trustee. So there was a union, or merger, a coalescing, as it has been called in the argument, of the title to the coal and the surface at the time Mr. Handel bought the surface first and the coal afterwards. Herman Handel held the surface entire, and one-third of the coal for himself, and two-thirds for these other two purchasers or their heirs.] [7]

Plaintiff presented this point:

2. If the jury find that Pauline Handel Jordan, and those

under whom she claims, held peaceable, adverse, notorious, continuous and exclusive possession of the land in dispute, under a claim of right for a period of more than twenty-one years, then their verdict must be for the plaintiff. *Answer:* This point is affirmed; I so instructed you in my general charge. [9]

Defendant presented these points:

3. If from the evidence the jury find that Nancy Large had title under the deed from Mary Jane Drake, of date December 9, 1863, and had been married to John R. Large before that date, and remained his wife until his death in 1902, she was not required to make entry for thirty years after she got her deed, to wit, before 1893; and if they further find that the plaintiff has not shown title by adverse possession for thirty years continuously before the defendant entered in 1897, the plaintiff is not entitled to recover, and the verdict should be for the defendant. *Answer:* This point is affirmed. You will observe, however, gentlemen, in that connection that Nancy Large does not seem to have asserted her title until she made this lease in 1897, so that the thirty years would expire, as is stated in the point, in 1893. There was that action of ejectment, which I have explained to you, and which resulted in a nonsuit. [10]

4. Even if the jury should find that on and prior to August 16, 1870, when Robert Robb made his deed for the coal underlying the land in dispute to Hay, Woods and Keenan, the said Robb held title to the land in dispute, surface and coal, under the will of his mother Jane Robb, as claimed, then his said deed for the underlying coal worked a severance of the coal from the surface, and the two estates never again coalesced, under the evidence, until the defendant acquired title by the sheriff's deed in 1898; and this being so, and there being no evidence that either the plaintiff or any of those under whom she held ever entered upon actual possession of the coal to mine and remove it, the adverse occupancy of the surface alone by herself, and by those under whom she claims, gave to the grantees of the coal no right or title by adverse possession to the underlying coal. *Answer:* Refused. [11]

5. Under the pleadings and evidence in this cause, the only plaintiff entitled to recover, if there can be any recovery at all against the defendant, is Pauline M. (Handel) Jordan; and, under the pleadings and evidence, in no event can said plaintiff recover more than the surface of the tract in dispute and an undivided one-third interest in the underlying coal; she being estopped by her abstract of title filed in this case from claiming more. *Answer:* Refused. [12]

6. Under the pleadings and evidence the verdict should be for the defendant. *Answer:* Refused. [13]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (7, 9–13) above instructions, quoting them.

*James P. Patterson* with him *James H. Payne* and *Boyd Crumrine,* for appellant.—Our contention that Pauline Handel Jordan, under the deeds for the surface only,—assuming that adverse possession was taken under these deeds,—did not show title to more than the surface, and that her recovery could not be for more, is supported by the further consideration that by the express terms of these several deeds the coal was excepted, and that therefore the possession of those under whom the plaintiff claims the surface was a distinct possession from that of the coal: Caldwell v. Copeland, 37 Pa. 427; Armstrong v. Caldwell, 53 Pa. 284; Hawk v. Senseman, 6 S. & R. 21; De Haven v. Landell, 31 Pa. 120; Ament's Ex'r. v. Wolf, 33 Pa. 331.

If we are right in our contention that the plaintiff, Pauline Handel Jordan, under deeds for the surface, followed by adverse possession under them for the statutory period, acquired title to the surface, without any claim upon the coal, we submit that the fact that these deeds for the coal were made is not evidence of any title in the grantees thereto, in the absence of evidence showing that they took adverse possession of the coal, claiming under these deeds. This position is supported by the authorities cited.

The fact is undenied that the claim to the coal by those in

possession of the surface was begun, if at all, within the period required by the statute of limitations, to wit, September 27, 1880. This element itself disposes of the question whether or not the plaintiff is entitled to any part of the coal.

We submit, that the entry upon the surface, under the deeds for the surface, by the respective grantees in these deeds, cannot in any manner aid the grantees under the deeds for the coal, no possession by them under said deeds having been shown: Hale v. Glidden, 10 N. H. 397.

The owner of mineral rights under such land, holding by virtue of a reservation in a deed, is neither a tenant in common nor a joint tenant with the owner of the surface: Neill v. Lacy, 110 Pa. 294; Powell v. Lantzy, 173 Pa. 543.

We submit that Pauline Handel Jordan, the only plaintiff in this case, cannot, in any event, recover more than the surface and one-third of the coal, and that the court erred in so instructing, and also in refusing defendant's fifth point: Mobley v. Bruner, 59 Pa. 481.

Pauline M. (Handel) Jordan, the sole plaintiff in this action at the time of trial, was concluded by the verdict and judgment in favor of the defendant Chambers, the appellant, on the former trial at No. 164, May Term, 1902, the judgment remaining unmodified and unreversed, and was thereby estopped from instituting the present action: McCall v. Neely, 3 Watts, 69; Burkhart v. Row, 4 Yeates, 134.

*Robert Woods Sutton*, with him *George C. Burgwin* and *George E. Shaw*, for appellee.—The deed of Robert Robb for the coal in 1870 to Hay, Woods and Keenan was ineffectual to create a severance of the legal title to the coal from that of the legal title to the surface, and therefore the legal title to the entire estate, coal and surface, is in the plaintiff and she may maintain ejectment for the land described in the writ: Schall v. R. R. Co., 35 Pa. 191; Chew v. Barnet, 11 S. & R. 389; Clark v. Martin, 49 Pa. 299; Steiner v. Baughman, 12 Pa. 106; McWilliams v. Nisly, 2 S. & R. 507; Burtners v. Keran, 24 Gratt. (Va.) 42; Miller v. Holman, 1 Grant, 243; Allen v. Allen, 45 Pa. 468; Waters's App., 35 Pa. 523; Crunkelton v.

Evert, 3 Yeates, 570; Del. & Hudson Canal Co. v. Hughes, 183 Pa. 66; Armstrong v. Caldwell, 53 Pa. 284.

The verdict or judgment at No. 164, May Term, 1902, in the case of Bennett v. Chambers, was not admissible for the purpose of estopping plaintiff, nor for any other purpose whatever.

OPINION BY MR. JUSTICE BROWN, January 3, 1910:

The title to the land involved in this ejectment passed out of the commonwealth in 1817, and Mary Robb acquired title to it by deed dated September 15, 1832. After her death it was sold in 1837 by her administrator, the father of the appellant, under an order of the orphans' court for the payment of debts, and the title which the appellant claims, passed to him through sundry conveyances, starting with the deed from Mary Robb's administrator to Hugh Toner and ending with that of the sheriff of Allegheny county to himself. Though an unbroken chain of title by deed was shown in the appellant, the proof submitted by the appellee, whose claim to title by adverse possession was sustained by the jury, was that from 1837 to 1897—a period of sixty years—posssesion of the land had never been taken by the grantee of Mary Robb's administrator nor by any subsequent grantee claiming under Toner.

The adverse possession upon which the appellee relied and recovered started in 1865. In that year—twenty-seven years after the sale by Mary Robb's administrator—Jane Robb, the widow of Oliver Robb, a son of Mary Robb, was in possession of the farm, living on it and claiming it as her own. There was no title in her out of Mary Robb. By her last will and testament, admitted to probate October 12, 1869, Jane Robb devised the farm to her son Robert. On August 16, 1870, he executed a general warranty deed for the coal underlying the property to Thomas J. Keenan, Malcolm Hay and Robert Woods. In 1874 his interest in the farm, excepting the coal, was sold at sheriff's sale, and, by various conveyances, it finally became vested in Herman Handel, to whom Thomas J. Keenan executed a deed for the one-third interest in the coal which Robert Robb had undertaken to convey to him in

1870. Upon the death of Herman Handel the property passed to the appellee in 1897 under proceedings in partition in the orphans' court of Allegheny county. Under instructions free from error as to the measure of proof required from the appellee to sustain the title claimed to have been acquired by her by adverse possession, the jury, with ample evidence before them, found her title to be good.

It is most earnestly contended that, as the title to two-thirds of the coal is still outstanding in Malcolm Hay and Robert Woods, or their representatives, under the deed of 1870 from Robert Robb, a general verdict in favor of the plaintiff for the land, including the coal, ought not to be sustained. While at first blush this may seem plausible, it is clear, upon reflection, that it cannot avail the appellant. When Robert Robb conveyed the coal in 1870 he had no interest in it nor in the surface above it. In 1865—five years before—Jane Robb, his mother, became the adverse occupant of the property, and for five years after her death he continued the adverse possession as her devisee, but during those ten years neither she nor he acquired any right in the property as against the real owner or owners, and against them nothing could have been acquired by adverse possession until the full statutory period of twenty-one years' adverse possession had expired. During all those twenty-one years the trespassers could at any time have been driven from the land by the holders of the paper title. During that period there was no title at all in Jane Robb or in anyone claiming under her as the adverse occupier of the premises. In 1886, and not before, title by adverse possession became rooted in the land, but its roots went no deeper than 1886. "If, according to Lord MANSFIELD, the right of possession is taken away from the former owner, and according to Chief Justice TILGHMAN, it is acquired by the disseisor's occupancy for the statutory period, Judge GIBSON was strictly accurate when he said, in Graffius v. Tottenham, 1 W. & S. 494, that the effect of the statute was to transfer to the adverse occupant the title against which it has run. He added, 'the title of the original owner is unaffected and untrammelled till the last moment,

and when it is vested in the adverse occupant, by the completion of the statutory bar, the transfer has relation to nothing which preceded it; the instant of conception is the instant of birth:'" WOODWARD, J., in Schall et al. v. Williams Valley Railroad Co., 35 Pa. 191. By the deed from Robb to Keenan, Hay and Woods there was no severance of the coal. There could not have been, for the deed conveyed nothing to them. Neither these grantees nor anyone claiming under them at any time before or since the acquisition of the title by adverse possession in 1886 have made any attempt to sever the coal from the surface.

In 1886, when title by adverse possession vested in Handel, then in possession of the surface, not only it, but what was beneath it, vested in him; but when the title so vested in him he was in the same position as Robb would have been in 1886, if still in adverse possession of the property, claiming ownership in it by such possession. Having undertaken to convey the coal when he had no title to it, if confronted by his conveyance of the same at the time of his acquisition of title by adverse possession, he would have been estopped, as against his grantees, from denying their equitable ownership in the coal and could have been compelled to convey to them. "It is not to be doubted that a vendor who undertakes to sell a full title for a valuable consideration, when he has less than a fee simple, but afterwards acquires the fee, holds it in trust for his vendee, and will be decreed to convey it to his use:" Clark v. Martin, 49 Pa. 299. In Chew v. Barnet, 11 S. & R. 389, Judge James WILSON conveyed to Chew before he had title to the property. A conveyance was subsequently made to him by his vendors under articles of agreement with him. To secure the purchase money he executed a mortgage upon the property upon which it was subsequently sold at sheriff's sale. When Chew, in an action of ejectment, sought to recover the property from the sheriff's vendees, it was held that their title was paramount to his, and it was said by GIBSON, J.: "What is the nature of the estate which Mr. Chew acquired by the conveyance from Judge WILSON? When that conveyance was executed, the legal title was in Jeremiah Parker, by patents from the commonwealth;

and Judge WILSON having nothing but an equitable title under the articles, could convey nothing more; his deed, therefore, passed to Mr. Chew only an equitable title. But it is said, the subsequent conveyance from Jeremiah Parker to Judge WILSON inured to the benefit of Mr. Chew. It did so; but only in equity, and to entitle him to call for a conveyance from Judge WILSON; and not as vesting the title in him, of itself, as contended, by estoppel. The facts presented constitute the ordinary case of a conveyance before the grantor has acquired the title; in which the conveyance operates as an agreement to convey, which, when the title has been subsequently acquired, may be enforced in chancery." Where one conveys with a general warranty land which he does not own at the time, but afterwards acquires the ownership of it, the principle of estoppel is that such acquisition inures to the benefit of the grantee, because the grantor is estopped to deny, against the terms of his warranty, that he had the title in question: Burtners v. Keran, 24 Gratt. 42. But the estoppel of the grantor, who subsequently acquires title for what he had undertaken to previously sell, inures only to the benefit of his grantee, who can compel a proper conveyance after the acquisition of title by the grantor. Those who were not privies or parties to the original conveyance can take no advantage of estoppel arising from it: Allen v. Allen, 45 Pa. 468. Estoppels may be by deed, but estoppels by deed avail only in favor of parties and privies: Sunderlin v. Struthers, 47 Pa. 411. To this appellant the estoppel of the appellee as against Robert Robb's conveyance of the coal is unavailing, for he was no party or privy to it. The situation as it existed at the time this ejectment was brought was a title in the appellee for herself absolutely to the surface and one-third of the coal, and as trustee for Hay and Woods, or those claiming under them, for an equitable title to two-thirds. But this outstanding equitable title to a portion of the coal was of no avail to the appellant as against the appellee, the holder of the legal title to the surface and of the coal, entitled under that title to possession of both.

In 1902 an ejectment was brought for this land by Rebecca

J. Bennett et al., claiming by descent from Mary Robb. The original defendant in the action was the present appellant, but the appellee and others, as claimants, were made co-defendants. The jury were sworn as against all the defendants, and the verdict having been rendered in their favor, the further contention of the appellant is that his title is res adjudicata, in view of that verdict. All that need be said as to this is that the verdict was in favor of all the defendants but settled no title in dispute among themselves. Whether Chambers could assert title as against his codefendants, or any of them, remained, as the court properly said in overruling a motion for a new trial, to be settled in a controversy likely to arise between them. This is that controversy.

Nothing in the assignments of error calls for further discussion. They are all overruled and the judgment is affirmed.