# Wytheville.

## WATTS v. NEWBERRY AND OTHERS.

### June 20, 1907.

1. EXECUTORS AND ADMINISTRATORS—*Priority of Debts—Guardian De Son Tort.*—The wards of a guardian *de son tort* are not entitled, under Code, section 2660, to any priority over the general creditors of such guardian in the administration of his personal estate after his death. The language of that section plainly accords priority only where there has been a qualification, and that qualification has been in this State, and cannot be extended by construction.

2. TRUSTS AND TRUSTEES—*Tracing Funds.*—In order to recover a trust fund which has been misapplied by the person holding it in a fiduciary capacity, it must be clearly identified or distinctly traced into the property, chose in action, or fund, which is to be made the subject out of which the trust fund is to be replaced. It is not sufficient simply to trace a fund to the estate of the defaulting fiduciary.

3. ATTORNEY AND CLIENT—*Attorney's Lien.*—Attorneys have no lien upon property placed in their hands for a special purpose which is inconsistent with or adverse to the claim of such a lien.

4. EQUITY—*Court Commissioner Disbursing Funds—Taking Sides in Controversy.*—A commissioner appointed to disburse funds under the control of the court is the mere agent of the court. If doubts arise as to which creditor is entitled to payment, he may ask the advice and direction of the court, but he has no right to take sides in controversies over funds in his hands, or to aid any claimant in asserting his right thereto, and documentary evidence furnished by him to show that a particular creditor is not entitled to a fund, is no part of the record, and cannot be considered by the court in the determination of that question.

5. TRUST AND TRUST DEEDS—*Conveying Particular Interest—Inurement.*—The lien of a deed of trust on an undivided fifth interest in a tract

of land, which is lost to the trust creditor by reason of a superior lien thereon, cannot be extended to a wholly different undivided tenth interest in the same tract which was not conveyed by the deed of trust, and, in fact, not owned by the trust grantor at the time the deed of trust was made.

Appeal from decrees of the Circuit Court of Tazewell county. A debt in favor of appellant was reported as a fiduciary debt and given preference in the report of the master. Another creditor excepted; the exception was sustained, and it was decided that appellant was not entitled to a preference, but that his debt stood on the same footing as other simple contract debts, unsecured. From these decrees this appeal was taken.

*Reversed in part.*

The report of Commissioner Chapman, and the exceptions thereto, referred to in the opinion of the court, are in the words and figures following, to-wit:

"*To the Hon. W. J. Henson, Judge of the Circuit Court of Tazewell county*:

"The undersigned commissioner in the chancery cause of Sue G. Hancock, who sues &c., vs. J. G. Watts' Ex. and *als.,* trix *et als*, and J. S. & A. P. Gillespie against same, would respectfully report that, on February 21, 1907, he filed a report, showing certain funds in his hands, showing that of said funds $615.20 arose from the sale of the property embraced in the trust deed from J. G. Watts and wife to A. P. Gillespie, trustee, to secure the Bank of Clinch Valley, and which had been reported as being due to H. Newberry as endorser, he having, as endorser, paid the debt secured by said deed to the bank.

"Your commissioner has been informed that, in addition to the proceeds arising from the sales mentioned in the report filed February 21, 1907, H. Newberry claims that he is also entitled,

under said trust deed, to the proceeds arising from the sale of the one-tenth interest in the Nye Cove tract. Your commissioner does not think that H. Newberry is entitled to the proceeds from the sale of this one-tenth for the following reasons:

"The deed of trust to A. P. Gillespie, trustee, is dated the 28th day of March, 1895, and conveys one undivided fifth part of the 2,325 acres, known as the Nye Cove tract, and recited as being the same land purchased by J. G. Watts and others from W. A. French and others. At the time of the date of this deed J. G. Watts was the owner of one undivided fifth of this Nye Cove tract under deed from William A. French and wife and H. W. Straley to H. Newberry, J. G. Watts and others dated 28th day of August, 1890. Your commissioner files as part of this report a copy of said last mentioned deed, marked 'Deed No. 1.'

"It will be seen that a vendor's lien was reserved in this deed for certain purchase money. A suit was afterwards brought to enforce this vendor's lien in the name of H. W. Straley and others against H. Newberry and others, and the one-fifth interest of J. G. Watts in said land was sold under the proceedings in said suit and purchased by Douglas H. Smith, and was conveyed to him by J. W. Chapman, commissioner in said chancery cause, by deed dated 4th day of April, 1900. Said last mentioned deed is herewith filed as part of this report, marked 'Deed No. 2.'

"The price at which the J. G. Watts interest in the Nye Cove tract was sold to D. H. Smith was the balance due from J. G. Watts on his one-fifth interest in said Nye Cove tract, including interest and cost.

"In the case of H. W. Straley and others against H. Newberry and others, the one-fifth interest of William Mahone in the Nye Cove tract was also sold for the balance of purchase money due from him and secured by said vendor's lien, and J. G. Watts became the purchaser of this one-fifth. Mr. Watts, however, failed to pay for this one-fifth, and the purchase money

for same was paid by H. Newberry and J. S. Gillespie, and under an agreement between J. G. Watts of the one part and Newberry and Gillespie of the other part, one-half of the Mahone fifth was conveyed to Newberry and Gillespie, and the other half thereof to J. G. Watts by deed, dated 4th day of April, 1900, and this was the interest owned by J. G. Watts at the time of his death and which was sold in this case. Your commissioner refers to the record in the case of H. W. Straley and others against H. Newberry & als, and to the reports and decrees in said case, which are in the clerk's office of your honor's court.

"Your commissioner will further state that he was counsel in the case of H. W. Straley and others against H. Newberry and others, and was the commissioner who sold the lands in the said case and made the deed to J. G. Watts for the one-half of the Mahone fifth.

"Your commissioner deemed it his duty to make a report of these facts as he knows them, and most respectfully asks your honor to determine to whom the proceeds arising from the sale of the one-tenth interest in the Nye Cove tract shall be paid.

"Respectfully submitted,

"J. W. CHAPMAN,

"Commissioner."

"Exceptions of H. Newberry.

"This supplemental report, and the consideration thereof by the court, is excepted and objected to, because liens and their order of priority are generally fixed prior to a sale of real estate or interests therein, and if not so fixed, they will not be subsequently fixed by supplemental report of commissioner appointed to sell said real estate made and filed with decree of court, directing him so to do, and providing for notice to be given to parties interested.

"2nd. Because the report purports to furnish documentary and other evidence to be considered by the court, and evidence cannot be introduced in a cause in this way.

"3rd. Because the question raised by said supplemental report, and by the exceptions to said commissioner's former report filed during this term, can only be decided upon the record of · these causes, as it stood when report of liens, made by Commissioner Royall, was confirmed.

"4th. It being averred in bill of complainant in the cause of Sue G. Hancock, who sues &c., vs. J. G. Watts' Ex. and *als.,* that the one-tenth interest of J. G. Watts in the Nye Cove 2,325 acres of land was embraced in the deed of trust to A. P. Gillespie, trustee, and this averment nowhere being denied by pleading or proof, and report of Commissioner Royall having been confirmed as to debt reported in favor of H. Newberry and said one-tenth interest in said Nye Cove land being sold to H. Newberry, and sale thereof confirmed, it is now too late, by supplemental report or otherwise, to attack the prior lien in favor of H. Newberry upon the proceeds of sale of J. G. Watts' interest in said Nye Cove land."

*Chapman & Gillespie,* for the appellant.

*Wm. H. Werth* and *S. M. B. Coulling,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The first assignment of error presents the question, whether or not, in the payment of the debts of John G. Watts, deceased, out of the assets in the hands of his personal representative, priority is accorded by law to the debt owing by the said decedent as guardian *de son tort* of the appellant, R. Bowen Watts, the assets being insufficient to discharge all of the debts.

Section 2660 of the Code provides that, where the assets of a decedent, in the hands of the personal representative, after the

payment of funeral expenses and charges of administration, are not sufficient for the satisfaction of all demands against him, they shall be applied as follows: First, to the claims of physicians and certain other named classes of persons for services rendered and articles furnished during the decedent's last illness, not exceeding fifty dollars to any one class of the persons named; Second, to debts due the United States and this state; Third, to taxes and levies assessed upon the decedent previous to his death; Fourth, to debts due as trustee for persons under disabilities, as receiver or commissioner under a decree of court of this state, as personal representative, guardian, or committee, where the qualification was in this state; Fifth, to all other demands except those in the next class; and, Sixth, to voluntary obligations.

It will be observed that the priority provided for by the fourth clause of section 2660 against the estates of guardians is limited by its language to guardians who qualify in this state. It is insisted, however, that the purpose of the Legislature in using that language, was to make a distinction between a guardian who qualified in this state and one who qualified in a foreign jurisdiction, and to give to the wards of the former class of guardians additional protection, and that it never could have been the intention of the Legislature to leave the wards of a *de facto* guardian in this state without a like protection.

Conceding that there is no reason why the wards of a guardian *de son tort* and of a guardian who qualified in this state, should not have the same right of priority in the distribution of their guardian's estate, the question is, does the statute give them such right?

In the case of *Price, &c.* v. *Harrison, &c.,* 31 Gratt. 114, 117, which arose before the amendment to the statute now under consideration, giving priority to debts due from trustees to persons under disabilities, it was argued that such persons were within the spirit or equity of the statute and should have the priority accorded by it, although they were not within the

letter. In reply to that contention, it was said by Judge Burks, in delivering the opinion of the court, that, "In the construction of statutes, the primary object is to discover the intention of the Legislature, and where that intention can be indubitably ascertained, the courts are bound to give it effect, whatever they may think of its wisdom or policy. Where the language is free from ambiguity and the intention plainly manifested by it, there is no room for construction." " 'There is always danger,' " he continues, quoting from Lord Tenderden, " 'in giving effect to what is called the equity of a statute; it is much safer and better to rely on and abide by the plain words, although the Legislature might have provided for other cases had their attention been directed to them.' " *Brown* v. *Lambert*, 33 Gratt. 256, 267-8; Suth. on Stat. Constr., sec. 415.

Applying these rules of construction to this case, it is clear, we think, that the statute does not embrace the wards of a guardian *de son tort*. The only guardian whose estate is subject to such priority is one who has qualified as such, and whose qualification was in this state. We are no more at liberty to disregard the requirement that he has been appointed guardian—for his qualification implies this—than we are to disregard the requirement that his qualification must be in this state.

It is insisted that the appellant, R. Bowen Watts, was entitled to have priority in the payment of his debt over the general creditors of the decedent's estate, because "the funds or estate represented by the recovery never belonged to the decedent, and upon his death, did not constitute a part of his estate, but had, by his wrongful act, become mingled with his other property."

The record, as we understand it, does not identify any part of the funds in the hands of the personal representative or under the control of the court, arising from the sale of the decedent's lands, as the property of the appellant, which went into the hands of his guardian, nor is it shown that said funds

embrace the proceeds of such property or any part thereof. They may do so, but the evidence fails to show it.

There are some cases cited by appellant's counsel which hold that, in order to give a preference to the beneficiary of a trust estate, which has been dissipated by the person holding it in a fiduciary capacity, it is not necessary to trace the trust fund into some specific property, but it is sufficient if it can be traced into the estate of the defaulting fiduciary.  The better doctrine, as it seems to us, and that sustained by the weight of authority, is that, in order to recover a trust fund which has been misapplied by the person holding it in a fiduciary capacity, it must be clearly identified or distinctly traced into the property, chose in action, or fund, which is to be made the subject out of which the trust fund is to be replaced.  See *Nat'l Bk.* v. *Life Ins. Co.,* 104 U. S. 54, 26 L. Ed. 693, and cases cited; 3 Pom. Eq. Jur. (3rd. Ed.) secs. 1047, 1048, note "f," and cases cited, and secs. 1079, 1080; *Holmes* v. *Gilman,* 138 N. Y. 369, 34 N. E. 205, 34 Am. St. Rep., 463, 20 L. R. A. 566; *Wetherell* v. *O'Brien,* 140 Ill. 146, 29 N. E. 904, 33 Am. St. Rep. 221.

The next question to be considered is whether or not the trial court erred in holding that the attorneys of John G. Watts had an attorney's lien on certain drafts payable to the order of said Watts, in their hands at the time of his death.

A short time before the death of Mr. Watts, he deposited in a bank  in Tazewell county several thousand dollars, the proceeds of the sales of lands or interest in lands owned by him, lying in the state of West Virginia.  After making the deposit, he consulted with two firms of attorneys, who had been his counsel for some time, as to the best method of preventing the money deposited in bank from becoming involved in a suit with his wife and her sons by a former marriage and tied up, as his other property then was, in order that the fund in bank might be under his personal control, to be applied by him to the payment of such of his debts as he thought proper.  "They ad-

vised him," as stated in their answer, "to put the money in New York drafts, where it would not be subject to garnishment or attachment proceedings, so that he could at any time realize the money on the drafts and apply it to the payment of such debts as he thought best." This advice he acted upon and secured three drafts, one of which he deposited with one firm of attorneys, and the other two drafts with the other firm. The drafts remained in the possession of his attorneys until Mr. Watts' death, which was unexpected and very soon afterwards. They continued to hold them after his death and until after this suit was brought, awaiting proper legal direction as to what disposition should be made of them. At the time of Mr. Watts' death, he was indebted to both firms for professional services rendered him, a part of which was for advice given him concerning the management of the funds mentioned. Both firms claimed an attorney's lien on the drafts respectively held by them for all the fees due them. The court required the drafts to be delivered to the personal representative of the decedent's estate, but without prejudice to the lien claimed by the attorneys. The debt due one of the firms was settled or adjusted after the filing of their answer, and the claim of the other firm alone is involved in this appeal.

The right of the attorneys to a lien on the drafts in their hands for their fees or any part thereof, is denied by the appellant, upon the ground, first, that the advice given the decedent was to enable him to conceal his property from his creditors, which was not such advice as they had the right to give, and the drafts were, therefore, not placed in their hands in the course of professional employment; and, second, that the deposit of the drafts with them was made for a specific purpose, which is inconsistent with the claim of a lien.

In the view we take of this assignment of error, it is unnecessary to consider the question whether or not the drafts came into the hands of the attorneys in the course of their professional employment, for, if it were conceded that the drafts were

deposited with the attorneys in the course of professional employment, it is clear, we think, that they were placed in their hands for a special purpose, inconsistent with the claim of a lien.

The object of placing the drafts in the hands of the attorneys, as stated by them in their original and amended answers, was to enable the client at any time to realize the money on the drafts and apply it to the payment of such debts as he thought best. The action of the client in depositing the drafts with his attorneys, as they had advised, for that express purpose, is inconsistent with the claim of lien now asserted by his attorneys. Their debt might not be, and most probably was not, one of the debts which he intended to pay out of the money deposited in bank. If it had been, he would very likely have given his attorneys a check in payment of their debt and obtained drafts for the residue only. If their debt was not one of the debts which he, in his then financial condition, thought it "best" to pay out of the proceeds of the drafts, he would be compelled to submit to the demand of his attorneys or have the whole purpose for which he deposited the drafts in accordance with their advice thwarted.

That an attorney has no lien upon property placed in his hands for a special purpose, which is inconsistent with or adverse to the claim of a lien, see *Anderson* v. *Bosworth,* 15 R. I. 443, 8 Atl. 339, 2 Am. St. Rep. 910; Weeks on Attorneys, sec. 371; 4 Cyc. 1016; *Ex parte Pemberton,* 18 Vesey 281; *Walker* v. *Birck,* 6 Term. Rep. 258, 262.

The remaining assignment of error is to the action of the court in sustaining the exception of H. Newberry to the reports of Commissioner Chapman, and holding that the proceeds arising from the sale of the one-tenth interest in the Nye Cove tract of land should be paid to H. Newberry.

One of the exceptions to Commissioner Chapman's report is that it purported to furnish documentary and other evidence, to be considered by the court in passing upon the question, upon which he asked the court's instructions.

A commissioner of a court, in making sales, collecting the proceeds of such sales, and paying the same out under the orders and decrees of the court, is the mere agent of the court. His duty in paying out the money collected from such sales is to pay it out as directed by the court. If he has doubt about which creditor is entitled to payment, he has the right to ask the court to construe its decrees and make clear what his duty is; but he has no right to take sides in controversies over the fund in his hands, or aid any claimant in asserting his right thereto. The exhibits filed with Commissioner Chapman's report to show that H. Newberry did not have a lien on the one-tenth interest in the Nye Cove tract of land purchased by John G. Watts in the case of *Straley and others* v. *Newberry and others,* were not, therefore, properly a part of the record, and could not be looked to in passing upon the question whether or not H. Newberry had a lien on the proceeds of the sale of that interest.

The report made in the case, ascertaining the liens and their priorities, and which was confirmed by the court, finds that John G. Watts conveyed certain property in trust to secure the payment of the debt asserted by Newberry. Among the property so conveyed was "one undivided fifth of that certain tract of land containing 2,325 acres, lying in Tazewell county, known as the Nye Cove land, and being the same land purchased by John G. Watts and others from W. A. French and H. W. Straley." The one-tenth undivided interest in the same tract of land, and upon the proceeds of which Newberry claims to have a lien by virtue of the said deed of trust, was not owned by Watts when the deed of trust was executed. That one-tenth interest was one-half of the undivided interest of William Mahone in the Nye Cove tract of land, and was purchased by Watts subsequently to the execution of the deed of trust at a judicial sale made in the cause of *Straley and others* v. *Newberry and others.*

While the undivided one-fifth interest purchased by Watts

from French and Straley and the undivided one-tenth interest
purchased by Watts at the sale made by the court, are parts of
the Nye Cove tract of land, they are wholly distinct interests.
Conceding, as was stated in argument, and not denied, (though
that fact does not clearly appear by the record), that the said
undivided fifth interest embraced in the deed of trust was sub-
ject to a lien for the purchase money due French and Straley,
and that it was sold to satisfy that lien, so that it was wholly
lost as a security for Newberry's debt, we know of no rule of
law that would extend the lien of the deed of trust to another
and wholly distinct interest in the land subsequently acquired
by Watts. If the interest subsequently acquired by Watts had
been a part of the interest conveyed by the deed of trust, al-
though that instrument contained no warranty of title, it may
be that, under the decisions of *Nye* v. *Lovitt,* 92 Va. 710, 717,
24 S. E. 345; *Reynolds* v. *Cook,* 83 Va. 817, 3 S. E. 710; 5
Am. St. Rep. 317; *Burtner* v. *Keran,* 24 Gratt. 42, and *Doswell*
v. *Buchanan,* 3 Leigh 365, 23 Am. Dec. 280, it would have
inured to the benefit of the deed of trust creditor; but, upon
this question we express no opinion, as it is not involved in this
case.

We are of opinion that the decree complained of should be
affirmed, except in so far as it holds that the decedent's attor-
neys had a lien on the drafts in their hands for the payment of
their fees; and in so far as it holds that H. Newberry was en-
titled to the proceeds of the sale of the decedent's one-tenth in-
terest in the Nye Cove tract of land, it should be reversed. As
to those claims, the decree must be reversed and set aside.

*Reversed in part.*