# Richmond

ADELAIDE M. HAYES, IN HER OWN RIGHT AND AS EXECUTRIX
OF THE LAST WILL AND TESTAMENT OF WILLIAM
R. HAYES, DECEASED, ET AL. V.
WILLIAM L. PARKER

and

ADELAIDE M. HAYES, EXECUTRIX UNDER THE LAST WILL
AND TESTAMENT OF WILLIAM R. HAYES, DECEASED
v. WILLIAM L. PARKER.

January 13, 1941.

Record No. 2277.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

*Baird, White & Lanning,* for the appellant.

*William G. Maupin,* for the appellee.

HOLT, J., delivered the opinion of the court.

The controversy in this case relates to the fee charged by the appellee, William L. Parker, for his services as attorney and counsellor of the appellant, Adelaide M. Hayes, personally and as executrix of the will of William R. Hayes, deceased. The services were in connection with the probate of the will, the general administration of the estate, and certain litigation respecting those matters.

Mr. Parker states his claim:

"That the fair value of said services (services rendered to Mrs. Hayes by him in her own right and as executrix of the estate of her husband, William R. Hayes) is the sum of $29,850.00; that from time to time said defendant paid to your complainant, on account of said services and for expenses incurred sums of money aggregating the sum of $9,850.00; that of the sum so paid your complainant disbursed and expended for the account of said defendant the aggregate sum of $894.27,

leaving a balance due your complainant of $20,894.27. In addition to actual disbursements made, your complainant, with the approval and consent of said defendant, incurred an indebtedness of $200 to one F. E. Kellam, for legal services rendered, and $50 to one Dr. Frank H. Redwood for expert medical opinion and advice. A statement of receipts and disbursements, and indebtedness incurred was duly rendered said defendant by your complainant.''

Mrs. Hayes contends that he has already been paid and overpaid for all that he has done.

After mature consideration, the chancellor presiding was of opinion that the net value of the estate of William R. Hayes, testate decedent, was $85,048.00. His decree, in part, reads:

''And the court doth further adjudge, order and decree that the said William L. Parker, was entitled for the services rendered by him to Adelaide M. Hayes up to the date of his discharge as the attorney of the said Adelaide M. Hayes, to-wit: the 23rd day of July, 1938, to the sum of $21,262.00, and that the said Adelaide M. Hayes is entitled as credits against the said claim of William L. Parker to the sum of $8,705.73, the amount which, as found by Commissioner Pilcher, has been paid to the said William L. Parker by the said Adelaide M. Hayes on account of his services, plus the sum of $1,474.37, being the sum found by the Commissioner to have been collected by William L. Parker since July 23, 1938, on securities standing in his name, which securities are the property of the estate of William R. Hayes; and plus $622.50, being the sum which the said William L. Parker testified in open court he had collected on such securities since the Commissioner's report was filed; an aggregate credit to the said Adelaide M. Hayes of $10,-802.60.''

This appeal is from that decree.

It appears from the record that for about thirty years William R. Hayes was pastor of a Roman Catholic

Church at Newburgh, New York. Because of ill health he resigned, or at least became pastor emeritus, in 1932. On July 15 of that year, at Newburgh, he executed a will by which he left all his property—except nominal sums to his sister, Mary Hayes Guilfoil, and his nephew, Paul H. Guilfoil—to the appellant, who at the time was unmarried and bore the name of Adelaide M. Grady. She was also, jointly with The National Bank of Newburgh, appointed executrix. The estate consisted exclusively of money in bank, stocks, bonds, and miscellaneous personalty, and was found by the court below to be of the gross value of $90,070.00.

The decedent had owned a residence in Newburgh which he had converted into apartments. On October 23, 1933, he conveyed it to the appellant, who, after his death, sold it for $15,000.

Soon after the execution of the will the testator and Miss Grady, who as a nurse had attended him during a serious surgical illness in May, 1931, and again in 1932, went to Virginia Beach, and thence to Elizabeth City, North Carolina, where, on September 12, 1932, they were married by a civil magistrate, not wishing a religious ceremony. They returned to Virginia Beach and after staying at a hotel awhile and occupying successively two rented furnished cottages, the testator, in the early part of 1934, bought a lot, taking title in the name of his wife. He also contracted for and began the construction of a dwelling house on the lot. In April, 1934, he went to New York City for an operation on his mouth, which was affected with a malignant growth. He did not recover from the operation but died there of a hemorrhage April 27, 1934.

Mrs. Hayes was interested both as executrix and as legatee, and on or about May 5, 1934, employed Mr. Parker to represent her. She said to him that she expected bitter litigation and was asked, "Why did you think so?" She gave these as her reasons for that conclusion:

"Because Mr. Hayes, himself, expected it and he knew it would come, and these people had made trouble right before it—made trouble right at the funeral and the death, and even during his sickness."

Subsequent developments demonstrate that her forebodings were amply justified.

The place of probate was of primary importance.

1. After ascertainment of the facts bearing upon the question, examination of the law, and due consideration, Mr. Parker concluded that Virginia Beach was the testator's residence and domicile at the time of his death, and accordingly offered the will for probate in the Circuit Court of Princess Anne county. The deposition of one of the attesting witnesses was taken by Mr. Parker at Newburgh, New York, and on May 28, 1934, in an *ex parte* proceeding, the will was duly admitted to probate by the clerk of the Princess Anne Circuit Court, and Mrs. Hayes thereupon qualified as executrix, giving bond in the sum of $51,000, with corporate surety.

2. Early in the history of these matters the surety company became uneasy because of litigation, actual and threatened, and indicated that it would apply to the court to be released. This was regarded by counsel for the executrix as presenting quite a serious situation, it being feared that in such event it would be difficult, if not impossible, to induce another company to go on the bond, in which case it was apprehended that a curator might be appointed. Considerable negotiation ensued, resulting in an agreement whereby the surety remained on the bond, Mr. Parker formally assuming joint control of the estate and countersigning all checks drawn on the estate's bank account, and the renting of a safety vault box in the joint names of the executrix and Mr. Parker as a place for depositing the securities.

3. Virtually all the duties of administration were performed by counsel, although Mrs. Hayes, who appears to be a woman of intelligence and force, was cognizant of

all that was done and kept in close touch with every phase of the administration of her decedent's estate.

In the estate were sundry stocks transferable in New York. Fearing that should a personal representative be appointed in that State such representative would undertake to prevent the transfer of these stocks to the executrix, counsel advised the immediate sale of them. This was done. However, because of certain unusual features of the situation, difficulties had to be overcome in making the transfers. The proceeds were invested in other stocks which, for a while, were carried in "street names", but, that being found unsatisfactory, they were, with the approval of the executrix, transferred to Mr. Parker.

The estate owned thirteen real estate bonds that had been bought by the decedent from S. W. Straus & Co. They had an aggregate face value of $88,500. These bonds were in default, reorganization proceedings in bankruptcy were pending as to some of the obligors, and the situation generally was one which required much time and a good deal of labor on the part of counsel for the estate. In her bill Mrs. Hayes alleges that these bonds, at the time of its filing, had an approximate total value of $15,000.

Considerable service was rendered also in the matter, first, of deciding whether the executrix had authority as such to carry out the contract for the construction of the house on the Virginia Beach lot, and then supervising the work, making payments to the contractors, etc. The contract price was $11,380, to be paid in installments as the work progressed.

In addition, the Newburgh, New York, apartments consumed quite a bit of counsel's time.

4. On June 1, 1934, Mrs. Mary Hayes Guilfoil and Paul H. Guilfoil took an appeal to the Princess Anne Circuit Court from the order entered by the clerk of that court May 28, 1934, admitting the will to probate. The grounds of contest alleged were: (1) That the decedent, at the

time of the execution of the paper purporting to be his will, was mentally lacking in testamentary capacity because, as alleged, he was afflicted with nine enumerated diseases and disabilities; (2) that he was under the domination of the beneficiary and that she had exercised undue influence upon him in the matter of the will; (3) that the clerk was without jurisdiction because, as alleged, the decedent was domiciled in the State of New York and not in Virginia; (4) that the decedent was mentally incompetent to contract a marriage and hence that the alleged marriage between him and the appellant was void, and (5) that if the marriage was valid it operated to revoke the will. Diligent preparation to combat these charges was made by counsel for the propounder, but when, on July 19, 1934, the case was called for trial counsel for the contestants moved for leave to withdraw the appeal, stating that they had concluded the decedent was domiciled in the State of New York at the time of his death, and therefore that the Virginia court had no jurisdiction either to probate the will or to hear and determine the contest. Over the objection of counsel for the propounder, the motion to withdraw the appeal was sustained. This is known in the record and briefs as the first will contest.

5. Immeditaely following the withdrawal of the appeal from the order of probate, counsel for Mrs. Hayes forwarded to the proper office in the State of New York, for record, the deed by which the Newburgh property had been conveyed to her. At the instance of the parties, and upon the advice of Mr. Parker that recording was not essential as between them, the deed had not been recorded previously.

6. Soon after the recording of this deed, which recording apparently gave the grantor's sister, Mrs. Guilfoil, her first information that such an instrument had been executed, the latter brought suit in the Supreme Court of New York for Orange county to set it aside. The grounds alleged were the same as those averred in

the will contest, plus allegations that the deed was without consideration to support it, that there had been no delivery of it, and that the grantee had come into possession of it fraudulently after the grantor's death. Upon the petition of the defendant, Mrs. Hayes, the case was, on the ground of the diverse citizenship of the parties, and over the objection of counsel for the plaintiff, removed to the District Court of the United States for the Southern District of New York, sitting at New York City.

By agreement of counsel there were several continuances of this case. A final one was granted the plaintiff upon a stipulation that the case should abide the result of the second and third will contests (hereinafter dealt with in some detail), then pending, respectively, in the Federal Court and in the Princess Anne circuit court. At Mr. Parker's instance, however, it was provided in the stipulation that if the final decision in those cases should be unfavorable to Mrs. Hayes it was to be without prejudice to her right to contest further the New York case.

7. Two days after taking the nonsuit in the proposed contest of the will in the Princess Anne circuit court, Mrs. Guilfoil, on July 21, 1934, filed in the Surrogate's Court for Orange county, New York, a petition for letters of administration on the estate of William R. Hayes. She alleged that her brother had died domiciled in the State of New York; that he left no will, but that a paper writing purporting to be his will had been filed in the Virginia court, but that it was null and void; and that the marriage claimed by Adelaide M. Grady to have taken place between the decedent and herself was also null and void. A citation was issued directed to Mrs. Hayes and calling upon her to show cause why the prayer for letters of administratiaon should not be granted. A copy of the citation was served on Mrs. Hayes in Virginia. After due investigation and consideration, counsel for Mrs. Hayes concluded that she should not ap-

pear in the proceedings, and she did not. On September 11, 1934, letters of administration were, by default, granted Mrs. Guilfoil.

8. On October 29, 1934, Mrs. Guilfoil as such administratrix, commenced a suit in equity in the District Court of the United States for the Eastern District of Virginia, against Mrs. Hayes, the bill alleging the diverse citizenship of the parties; that William R. Hayes died domiciled in the State of New York; that the plaintiff had been appointed administratrix of his estate by the Surrogate's Court of Orange county in a proceeding to which Mrs. Hayes was a party; that the decedent died possessed of a large estate consisting of personalty of which the defendant had taken possession; and that the plaintiff was the sole heir and distributee of the decedent, and in her own right as well as in her capacity as administratrix was entitled to the property. The prayer of the bill was for an accounting and for a decree directing the delivery of the estate to the plaintiff.

Mr. Parker, as counsel for Mrs. Hayes, moved to dismiss the bill, assigning as grounds that neither as distributee nor as administratrix did Mrs. Guilfoil have the legal right to sue in a Federal court in Virginia. Along with the motion to dismiss, counsel filed an answer, challenging in more elaborate form the plaintiff's right to maintain her suit. The motion to dismiss was overruled. However, due to subsequent events in other, but related, litigation, the case never came to trial on the merits.

9. On May 23, 1935, and while the suit last mentioned was still pending, Mrs. Guilfoil commenced another suit in equity against Mrs. Hayes in the District Court of the United States for the Eastern District of Virginia. The bill alleged that William R. Hayes died intestate and domiciled in the State of New York, admitted the probate by the clerk of the Princess Anne Circuit Court of a paper writing purporting to be his will, charged that at the time he executed the instrument he was of

unsound mind, and also that the execution had been obtained by the undue influence of the defendant. The prayer was that the court should direct an issue *devisavit vel non,* and that pending determination of the issue the defendant be enjoined from disposing of the assets of the estate. Section 5259 of the Code of Virginia was invoked by the plaintiff as authority for the suit.

A motion to dismiss was filed, accompanied by an answer, the motion being grounded on the proposition that the authority conferred by section 5259 is in probate, not in equity, and that Federal courts have no probate jurisdiction.

The motion was argued orally in November, 1935, and briefs submitted. The following April, 1936, the Judge of the District Court, in a written opinion, *Guilfoil* v. *Hayes,* 17 F. Supp. 535, sustained the motion. The plaintiff took an appeal to the United States Circuit Court of Appeals for the Fourth Circuit. Counsel for Mrs. Hayes moved to dismiss the appeal on the ground that it involved merely a moot question. The case was argued in October, 1936; and in November, 1936, the court overruled the motion to dismiss the appeal but affirmed the decision of the District Court. *Guilfoil* v. *Hayes,* 86 F. (2d) 544. The appellant then petitioned the Supreme Court of the United States for a writ of *certiorari.* Counsel for Mrs. Hayes filed a brief in opposition. In March, 1937, the petition for *certiorari* was denied, 300 U. S. 669, 57 S. Ct. 511, 81 L. Ed. 876, thereby ending the case. This is known in the record as the second will contest.

10. In May, 1936, Mrs. Guilfoil filed still another suit, the third, contesting the will. It was instituted in the Princess Anne Circuit Court and took the form of a bill in equity under section 5259 of the Code of Virginia seeking an issue *devisavit vel non.* The allegations were substantially the same as in other contests. Mr. Parker, as counsel for Mrs. Hayes, interposed two special pleas along with an answer. One plea was to the jurisdiction of the court, and was based upon the statute of limita-

tions, the question raised being whether the amendment to the statute, by which amendment the period for instituting contest was reduced from two years to one year from the date of probate, applied to the case, the amendment having been passed after the will in question had been admitted to probate. This plea, upon consideration, was rejected by the trial court. The other plea presented the question whether Mrs. Guilfoil was a party in interest and had any standing to sue. It was based upon the contention that, since the estate consisted exclusively of personal property and there were no children, Mrs. Hayes, as widow, would be entitled to the entire estate under the Virginia statute even if the will were held invalid. This plea was allowed by the trial court, and the issue raised by it turned upon whether the decedent was domiciled in New York or in Virginia at the time of his death. If the former, Mrs. Guilfoil had an interest under the New York statute, while if the latter she had no interest. After a full hearing, involving the examination of fifteen witnesses, the case was argued by counsel. The trial court held the decedent's domicile at the time of his death to have been in Virginia, and that Mrs. Guilfoil was not a party in interest. Her bill accordingly was dismissed. She petitioned this court to allow an appeal. Counsel for Mrs. Hayes filed a brief in opposition, but the appeal was allowed. He also argued the case orally before this court on November 10, 1937, and submitted a brief. On January 13, 1938, the decree dismissing Mrs. Guilfoil's bill was affirmed. *Guilfoil* v. *Hayes,* 169 Va. 584, 194 S. E. 804. In accordance with the stipulation filed in the suit to set aside the deed conveying the Newburgh apartment property to Mrs. Hayes, a decree was entered in that case confirming her title.

11. The surgeon who performed the final operation on the decedent in New York City filed with the executrix a claim of $2,000 for his services. It was not allowed. Then followed a prolonged correspondence be-

tween counsel and the claimant and his counsel, but no settlement having been reached, the doctor, in March, 1938, brought suit against the executrix in the Princess Anne Circuit Court for $2,000, with interest from April, 1934. The case was settled by compromise for $1,500.

12. Counsel rendered extensive service in the matter of taxes: Federal estate, Federal income, State inheritance and State property, tangible and intangible.

In addition to things done are things not done; contests evaded are sometimes contests won.

The place of probate was important. Newburgh was to be avoided because if jurisdiction had attached there Mrs. Hayes might have found herself faced by local sympathies and certainly on an issue *devisavit vel non,* in an appeal to the jury, this might have been urged with telling force. Father Hayes for about thirty years had been a devout Catholic and a priest of his church, devoted to its tenets and beloved by his parishioners. Suddenly, and without adequate explanation, he abjured his vows, flouted the canons of his religion and renounced the hope of eternal salvation in order to get married,— though, of course, we do not undertake to express any opinion as to the spiritual effect of all that was done. During this time he was on the payroll of his parish as pastor emeritus.

It is not unreasonable to suppose that these matters might have been stressed in an effort to annul the deeds both to the Newburgh property and to the Virginia Beach property.

There was another possibility—the validity of the marriage itself had been challenged. Whether or not this could be done under the North Carolina statute and the decisions construing it now that one of the contracting parties was dead is a matter about which distinguished counsel differ. Commenting upon it, Commissioner Pilcher said:

"Your commissioner's investigation of the North Carolina statutes and decisions leads him to the conclu-

sion that there has been no decision construing the proviso where there has been a marriage contrary to the prohibitions of the statute followed by cohabitation and the death of one of the spouses, no issue surviving. The question is therefore an open one, to be decided by the courts of other states according to their respective construction of the statutes.''

If the marriage was void, Mrs. Hayes was not a widow and could not take in that capacity. If Mr. Hayes was weak-minded and had been subjected to undue influences, the will might have been set aside, together with her deeds of conveyance. From all of which it appears that this decedent's entire estate hung in the balance.

These two consolidated causes were referred to Master Commissioner George Pilcher, with directions to inquire, *inter alia*, ''what legal services, if any, have been rendered by William L. Parker to Adelaide M. Hayes, in her own right, and as executrix of the estate of William R. Hayes, deceased, and the reasonable value thereof.''

Mr. Parker and five other members of the Norfolk bar testified in his behalf before the Commissioner, while Mrs. Hayes, two lawyers from New York and one member of the Norfolk bar, also four laymen, testified in her behalf. The lawyers called by the respective sides testified for the most part as experts. In addition, more than fifty documentary exhibits were filed, making altogether quite a voluminous record.

On December 21, 1939, Commissioner Pilcher filed his report. It bears upon its face evidence of careful research and consideration both of the testimony of witnesses and of the many exhibits placed before him. The result of his conclusions was that Mr. Parker should be allowed a fee of $22,500, and his finding is to that effect.

Counsel for Mrs. Hayes filed some fifty exceptions to the report. After hearing argument, the chancellor entered a final decree on December 5, 1939. By that decree the 9th exception was sustained. It related to the

value of the estate as found by the Commissioner, $89,-394. The value was adjudged to be $85,048. All other exceptions were overruled, the report, as amended, was confirmed, and the fee fixed at $21,262, subject to an aggregate credit of $10,802.60 by reason of payments on account and some other items, thus making the net recovery awarded $10,459.40, with interest from the date of the decree. From that decree Mrs. Hayes has appealed.

Request was made that an issue out of chancery be ordered; it was refused.

In the light of what has been said, a reference was pre-eminently proper—certainly the chancellor did not abuse his discretion. *Harris* v. *Citizens Bank, etc.,* 172 Va. 111, 200 S. E. 652.

Mr. Parker's fee was not in form contingent, but he had every reason to believe that it hung upon success.

The commissioner in discussing that phase of these cases said:

"There was no contract entered into between Parker and Mrs. Hayes that the fee should be contingent, but it is certain that if the litigation had been lost, Mrs. Hayes would not have been able to compensate her attorney, and in the sense that his fee depended upon the successful termination of the litigation, his remuneration was contingent upon that event. Mrs. Hayes testified that the fee was not upon a contingent basis, but that Parker stated that he wished to be paid from time to time, and that she offered him a retainer, which he declined. It is certain that she had to borrow money to pay for the probate of the will and the expenses of her counsel immediately after the probate for a trip to New York, and while it is quite possible that she had individual possessions of some ten to thirteen thousand dollars which were not derived from her husband's estate, yet the record discloses that she was unwilling to jeopardize these in litigation over her husband's will. She evidently left Parker under the impression that she

could not raise any money outside of what would come to her through her husband, and that that would be his only source of remuneration. That was one of the reasons for Parker's attitude toward the surety company and his refusal to permit it to exercise joint control. It will be noted that counsel for Mrs. Hayes did not cross-examine Parker on this statement, nor did Mrs. Hayes make any effort to refute it.

. ''While Mrs. Hayes is not to be criticized for her unwillingness to jeopardize her personal holdings in this litigation, yet it would seem to be unfair for her to set up at this time her ability to pay counsel, when she did not so inform him at the time of his employment.

''Your Commissioner therefore holds that, for all practical purposes, the remuneration of Parker was contingent upon the successful termination of the litigation involved.''

A consideration of the elements which enter into the ascertainment of a proper fee for counsel are stated by the commissioner, and in support of his conclusions he cites and quotes at length from *Campbell County* v. *Howard & Lee,* 133 Va. 19, 112 S. E. 876, and *In re Osofsky* (D. C.), 50 F. (2d) 925.

Exception is also taken to the fact that certain other counsel fees and costs of this litigation are charged against Mrs. Hayes or the estate of her decedent. They amount to $4,472.32, made up of $1,400 paid to A. W. Bennett, a Newburgh lawyer, and to Hunt, Haile & Bennett, associate counsel in New York. Phases of this litigation extended to New York. Their knowledge of local law and of the practice there was desirable and necessary. That Mr. Parker should have associated them with him might have been expected. There is a further item of $3,072.32, representing costs and expenses incurred. No part of any of these items went to Mr. Parker and should not be charged against him.

· Exception is taken to the lien asserted by Mr. Parker to certain securities. As to that the commissioner said:

"Counsel for Mrs. Hayes on page 27 of their brief contend that counsel has no lien on securities in the lock box and moneys deposited in bank for his fee and cites the case of *Watts* v. *Newberry*, 107 Va. 233, 57 S. E. 657.

"In this case a fee was denied counsel for several reasons. Counsel had given advice to his client prior to the litigation which enabled the client to conceal his property from his creditors, and further, the securities placed in his hands were for a specific purpose, which was inconsistent with the claim of a lien.

"Such condition does not exist in the present case. The securities were placed in Parker's name during the litigation and for the benefit of the litigation, to the end that they might not be reached in a foreign jurisdiction by a suit against the transfer agent and the litigation regarding the estate could not be transferred to a foreign State. 5 Am. Jur., pages 388 and 389."

The amount due has been fixed. Mrs. Hayes is solvent and nothing is to be gained by forcing Mr. Parker to resort to supplementary proceedings in attachment or otherwise. Often, as here, there is no yardstick by which to measure the value of professional services. The best that we can do is to accept the composite judgment of competent experts.

We have the painstaking report of a competent and experienced commissioner who saw the witnesses and heard them testify. We have witnesses of character, experience and intelligence, whose judgment the commissioner has adopted; and, finally, we have a decree confirming, with unimportant exceptions, the conclusions which the commissioner has reached. That such a decree of confirmation should be upheld until error is made to appear has long been settled law in Virginia.

Cross-error, dealing with interest upon the recovery, is assigned. Demand was made and was refused on June 30, 1938.

It may be stated as a general rule that interest on a claim for legal services is recoverable from the time

it becomes due and payable, and it becomes due and payable when a demand is made and refused. Note, 52 A. L. R., p. 197, citing many cases.

■ The judgment here was intended as compensation in a lump sum for all that has been done, and on that basis it should bear interest from its date only.

When we have determined what is a proper fee, other matters cease to be of primary importance, and their consideration in detail becomes unnecessary.

■ When we have considered the evidence of witnesses who have testified and their character, the conclusion reached by the commissioner and by the court below, the time covered by this litigation, the amount involved, the skill with which it was conducted and those things done, not in but out of court, we are of the opinion that the decree of the court below should be affirmed, and it is so ordered.

*Affirmed.*